Edward JOHNSON

v.

SWORD LINE, Inc.

Civ. A. 12779.

United States District Court
E. D. Pennsylvania.

Aug. 7, 1957.

**692**

Benjamin Pomerantz and Donald J. Farage, Philadelphia, Pa., for plaintiff.

Rawle & Henderson, Philadelphia, Pa., for Sword Line, Inc.

MacCoy, Evans & Lewis, Philadelphia, Pa., for American Mutual Ins. Co.

LORD, District Judge.

This matter comes before the Court upon Defendant's Motion for Summary Judgment as renewed at several stages of the proceedings, most recently since the remand of the cause by the United States Court of Appeals for the Third Circuit for further proceedings. Johnson v. Sword Line, 1957, 240 F.2d 954.

Plaintiff Edward Johnson, a longshoreman employed by Lone Star Stevedoring, Inc., was injured on June 28, 1950, while working in the hold of a ship owned by defendant Sword Line, Inc. Johnson did not elect to recover damages against Sword Line according to the procedure prescribed in § 33 of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 933(a), but instead filed a claim for compensation under the act against Lone Star Stevedoring, Inc.

In due course the Deputy Commissioner for the Third Compensation District ordered Lone Star and its carrier, American Mutual Insurance Company, to pay compensation to plaintiff. The award, as subsequently amended, may be assumed to have been paid in full to Johnson on October 4, 1951, when he commenced the suit at bar against Sword Line, alleging that its negligence had caused his injuries.

As the opinion of the Court of Appeals heretofore cited explains, Sword Line denied liability and raised the statutory assignment of Johnson's cause of action to Lone Star and to its insurer as a bar to the suit; § 33(b) and (i) of the Longshoremen's and Harbor Workers' Act, 33

U.S.C.A. § 933(b) and (i). Johnson admits that he has received the amount required to be paid to him under the amended compensation award, and that no election to sue a third party was filed by him as required by § 33(a) of the Act, 33 U.S.C.A. § 933(a).

Sword Line filed a motion for summary judgment. Its grounds were that the statutory assignment and the acceptance of the compensation award barred Johnson's action. A grace period of 30 days was granted to Johnson to enable him to secure reassignment of the action, if possible, from Lone Star and its insurance carrier, American Mutual Insurance Co. When Johnson failed to secure such reassignment, summary judgment for Sword Line was granted, D.C., 146 F. Supp. 940.

The Court of Appeals reversed and remanded, holding that the Court below erred in not giving Johnson an opportunity to show conflict of interest, saying (240 F.2d at page 956):

"The language of the statute, if taken literally, would provide an absolute defense to the third party in a damage suit brought directly by the injured longshoreman where the latter has accepted compensation and has not obtained a reassignment of the cause of action from his employer or the employer's compensation insurance carrier. Sections 33 (b) and 33(i). But in Czaplicki v. The Hoegh Silvercloud, 1956, 351 U.S. 525, 76 S.Ct. 946, 100 L.Ed. 1387, the Supreme Court rejected a literal interpretation of the Act."

In the Czaplicki case the employer's insurance carrier, the statutory assignee, likewise did not bring suit after payment of compensation. That assignee, the Traveler's Insurance Company, however, was also the insurer of the independent contractor who erected the steps whose collapse caused Czaplicki's injury. Faced with the situation wherein the assignee would have to sue itself in order to enforce the assigned cause of action—a manifest absurdity—the Supreme Court held that the conflict of interest required

relief from the literal terms of the statute, but added (351 U.S. at page 532, 76 S.Ct. at page 950):

"* * * [A]ll we hold is that, given the conflict of interests and inaction by the assignee, the employee should not be relegated to any rights he may have against the assignee, but can maintain the third-party action himself * * *."

The Czaplicki case was decided by the United States Supreme Court on June 11, 1956, four days after the United States District Court which heard the prior proceedings in the instant case had granted the defendant's motion for summary judgment. The appeal to the Court of Appeals followed, and the cause has now been remanded to this Court for an inquiry as to whether the present case involves such conflict of interest. Inaction on the part of the assignee might point toward such conflict—although it would not necessarily be a basis for such a finding. Johnson v. Sword Line, 3 Cir., 1957, 240 F.2d 954, 956. The opinion pointed out that under § 33(e) of the Act, Johnson has an interest in his right of action even after it has been assigned, and cautioned that (at page 956):

"* * * The circumstances which govern the failure of the assignee to bring suit must be the subject of thorough inquiry in the trial court and a reasonable latitude must be allowed to Johnson in the presentation of his case. The statutory assignee or its insurance carrier may not be permitted to stand pouting in a corner like a sulky milkmaid at a barn dance and simply refuse to bring suit without adequate reason. * * *"

The inaction of the assignee in the instant case is patent. The questions we are to determine are whether that inaction is caused by a conflict of interest and, if not, whether it is motivated by some good reason. "The Congressional intent that the statutory assignee shall bring suit unless there be good reason why it should not be instituted is ob-

vious." Johnson v. Sword Line, 240 F.2d at page 957.

There is no conflict of interest in the Czaplicki sense; it has been conceded by all concerned in the current proceedings that American Mutual is not the insurer for the Sword Line.

As to the possible absence of good reason for the assignee's forbearance, counsel for plaintiff has assumed the burden of making that showing. Before this Court are certain interrogatories served on American Mutual; the oral deposition of Winfield M. Brown, Philadelphia District Claim Manager for American Mutual given at the behest of the plaintiff; and also supplemental interrogatories thereafter served by plaintiff upon American Mutual.

Having duly secured leave, American Mutual filed briefs and participated in the oral arguments. This Court is satisfied that the record thus made, following the remand of the cause to the United States District Court, comprises a thorough inquiry into the circumstances motivating American Mutual's failure to bring suit, and that in the course thereof Johnson has been given the reasonable latitude in the presentation of his case which was directed by the United States Court of Appeals in the course of its remanding opinion, ibid., 240 F.2d 956.

Plaintiff contends that the Court of Appeals has condoned a certain statement (set out later) by the plaintiff which the Compensation Commissioner found to have been deliberately false. He avers that at one time one of the counsel for American Mutual, upon oral notice that Johnson intended bringing action against Sword Line, "at no time objected to such proceeding, but, at the same time, orally and implicitly agreed that plaintiff might institute such an action."

In particular, plaintiff contends that American has not made a proper investigation of the cause; has not asked plaintiff what evidence it is prepared to offer at trial; and has not consulted with Sword Line to determine what evidence it may have available for its defense.

As to the data in American's files, said by plaintiff to consist only of Lone Star's accident report, two doctor's reports, and copies of the petition and award in compensation, plaintiff insists that such are insufficient basis for a refusal to bring suit. The reasons given by Mr. Brown, American's Claim Manager, are argued by plaintiff as being inadequate.

Plaintiff also asserts that this appears to be the first case in which American has refused an assignment; he points out that Mr. Brown's judgment was not affected by "the fact that plaintiff had offered to repay the compensation award"; and recites that the Claim Manager, Mr. Brown, was aware that American was not being asked to spend money for costs in this case, and that plaintiff was planning to lay out all of his own costs.

Plaintiff emphasizes a conversation between counsel for Sword Line and American Mutual which is said to have offered to reimburse the latter for certain expenses via reciprocity for American's forbearance. Plaintiff views the testimony that American promptly and flatly rejected that suggestion of reimbursement with a dim and skeptical eye; he asks this Court to recognize that co-operation and reciprocity between insurers may be presumed to be a custom or practice.

Defendant's position is for the most part covered in the deposition of Winfield M. Brown, District Claim Manager for the American Mutual. His authority to speak for the American, and to make the decision as to pursuit of the claim, is unquestioned. As to his qualifications (which bear upon the reasonableness of the decision to forego suit), the record shows him to be an expert in evaluating longshoremen cases. He has been in the insurance business for many years, and has been District Claim Manager for this carrier for 15 years. Prior thereto, he worked as an investigator on the waterfront and handled many longshoremen's cases. His best estimate is that he had a minimum of 10 to 15 such cases a week

for his entire period of service. Defendant seems justified in asserting that "he may therefore be assumed to know what to look for and what factors to weigh in determining whether there is a good third-party action."

Obviously, the elements of a third-party claim are different from those of compensation. The latter is absolute liability, whereas the possible liability of a third party is grounded on proof of its negligence. See Czaplicki v. The Hoegh Silvercloud, D.C.S.D.N.Y. 1953, 133 F.Supp. 358, 361, reversed on other grounds in 351 U.S. 525, 76 S.Ct. 946, 100 L.Ed. 1387.

The claim agent concluded that the claim was not meritorious. The sum of his testimony was that he had handled so many claims that his diagnosis was somewhat instinctive. Pressed for particular reasons, he mentioned that the accident report spelled injury caused by the conduct of a fellow employee in the light of his experience. He further noted that the statements of the claimant in his claim for compensation and in his reports to the attending physicians were inconsistent among themselves and differed widely from the allegations of the complaint.

The claim agent's low estimate of the value of the claim was also influenced by a development in the compensation proceeding. The original award of compensation was made July 12, 1951, based on a total of 43⅝ weeks. On November 23, 1951, however, the award in compensation was modified upon the following additional Finding of Fact of the Deputy Commissioner charged with the administration of the Longshoremen's and Harbor Workers' Compensation Act:

"That the claimant above named, while under oath at a hearing held by the Deputy Commissioner on June 28, 1951, gave testimony which was false and which he knew to be false in regard to his activities and employment since his injury; that he denied any employment between April 12, 1951, and June 28, 1951,

whereas he had, in fact, been employed since May 7, 1951, * * " and modified the award correspondingly.

■ It is at least clear that no explanation satisfactory to the carrier has ever been given as to the employee's conduct in this respect; nor has the deputy commissioner's finding ever been contested or appealed.

Returning to the contentions of the plaintiff, brief comments on those heretofore mentioned may suffice. First, it is the opinion of this Court that the Court of Appeals did not purport to pass upon the merits of plaintiff's case in any way, and in particular, did not condone the error which the Commissioner designated as a deliberately false claim.

As to the alleged consent to suit, the showing seems insufficient to warrant a finding of oral consent, for the purposes of this action. No showing which would work an estoppel has been made, nor is it clear that the requirements of an oral contract are met. This opinion in any event does not pass upon that question, much less does it decide that an oral contract would suffice. The relief available to plaintiff, if any, would not seem to be within the scope of the present action.

As to the alleged insufficiency of American's investigation, it seems that the data available to the Claim Manager, in the light of his experience, is by no means so patently inadequate as to raise an inference of bad faith on his part.

The allegation that this is the first case in which American has refused reassignment is not persuasive, standing alone. Whatever probative value such circumstance might have seems highly speculative.

As to the assertion that Brown knew it would have no financial responsibility after reassignment, and that plaintiff had offered to repay compensation in consideration for reassignment, no inference can be drawn. The first branch is simply a description of the consequences of reassignment, of which Brown could hardly be unaware. The second describes the circumstances under which reassignment is permissible as a matter of law. The Owen, D.C.E.D.Pa.1942, 43 F.Supp. 897. Neither proposition is authority to the effect that reassignment is compulsory in any circumstance. To the contrary, the Act has no provision on that score.

As to the possible inferences to be drawn from the Sword Line offer to reimburse American Mutual for expenses in return for forbearance, no inference of venality can be drawn. As to the position that cooperation and reciprocity between insurers and other insureds or their insurers may be presumed, there is no matter of common knowledge involved as to which judicial notice may be taken.

In sum, it appears that American Mutual and plaintiff had no conflict of interest, and that the assignee had reasons for forbearing the hazard of suit on its own part. As to reassignment, there is no reason in law that would require such reassignment, barring bad faith—and as to the latter, there is no evidence.

If American Mutual and Sword Line or its carrier were shown to have common financial stakes in American's forbearance, the result here would be governed by the Czaplicki case. Or if there were any showing that American Mutual had purported to bargain away any rights of the claimant, plaintiff might succeed. United States Fidelity & Guaranty Co. v. United States, 2 Cir., 1945, 152 F.2d 46, 48. Absent such circumstance, to permit plaintiff to proceed simply because he now feels that he can profit by reneging his statutory election would be to disregard § 33(b) and (i) of the Act. If an assignee cannot determine for himself whether he wishes to prosecute an assigned claim—provided always that he makes a real decision, in good faith, free from arbitrariness or caprice —the Act of the Congress is left with little vitality.

By the same reasoning, to compel reassignment in such case would flout the statute and also set precedent for a procedure of compulsory reassignment not contemplated by the Act. Since the law

has no interest in fostering litigation, when the owner of a cause of action decides as a matter of reasoned choice to forego prosecution, it follows that the law should not compel him to assign it to someone who has already made a statutory election to accept compensation rather than hazard suit.

Accordingly, Defendant's Motion to Dismiss is hereby granted.