Edward JOHNSON, Appellant,

v.

SWORD LINE, INC., a New York Corporation.

No. 12383.

United States Court of Appeals Third Circuit.

Argued March 6, 1958.

Decided July 15, 1958.

As Amended Aug. 13, 1958.

**542**

Donald J. Farage, Philadelphia, Pa., for appellant.

Harrison G. Kildare, Philadelphia, Pa. (Rawle & Henderson and Thomas F. Mount, Philadelphia, Pa., on the brief), for Sword Lines.

Frederick L. Fuges, Philadelphia, Pa. (Edmund B. Spaeth, Jr. and MacCoy, Evans & Lewis, Philadelphia, Pa., on the brief), for American Mut. Liability Ins. Co.

Before BIGGS, Chief Judge, and GOODRICH and McLAUGHLIN, Circuit Judges.

BIGGS, Chief Judge.

This is the second time this case has been before us on appeal. Our previous opinion is reported at 1957, 240 F.2d 954. Upon remand, for the reasons stated hereinafter, the court below granted a motion for summary judgment filed by Sword, D.C.E.D.Pa.1957, 153 F.Supp. 691, and the second or instant appeal followed.

A brief summary of the operative facts and reference to the opinions cited are necessary for an understanding of the nature of the instant appeal. The plaintiff, Johnson, was a longshoreman employed by Lone Star Stevedoring Company, Inc. (Lone Star), and was injured while working in the hold of a ship owned by Sword. Johnson's complaint alleges that he was injured when iron pigs which were being hoisted from the hull of the ship fell from a bucket in which they were being lifted from ship to shore. Johnson alleges that the injury resulted from the failure of a complicated wiring system which was rigged by the stevedoring crew and which was employed because two of the ship's winches were defective. The failure of this wiring, it is asserted, caused the bucket containing pig iron to be joggled and the iron fell on Johnson.

An amended award of compensation [1] under the Longshoremen's and Harbor Workers' Act, 33 U.S.C.A. § 901 et seq., was made to Johnson on November 23, 1951, against Lone Star and its insurance carrier, American Mutual Insurance Company (American Insurance). American Insurance was not and is not the insurance carrier of Sword. Johnson conceded that he received the compensation award and that no election to sue a third party was made by him as required by Section 33(a) of the Act, 33 U.S.C.A. § 933(a). [2]

Section 33(b), [3] 33 U.S.C.A. § 933(b), of the Act provides that acceptance of compensation under an award filed by the Commissioner shall act as an assignment to the employer, Lone Star, of all right of the person, Johnson, entitled to compensation to recover damages against a third person, here Sword. Section 33(i), id. n., 33 U.S.C.A. § 933(i), provides that where the employer, Lone Star, was insured and the insurance carrier, American Insurance, has assumed the payment of compensation, the insurance carrier shall be subrogated to all rights of the employer, Lone Star, under the law. Section 33(e) of the Act, 33 U.S.C.A. § 933(e), [4] states that any amount recovered by the employer, here Lone Star, in a suit based upon the assignment effected by operation of Section 33(b), shall be first applied against the expenses and costs of the suit and by way of reimbursement of the amount paid as compensation to the employee, and that the employer "shall pay any excess to the person entitled to compensation or to the representative", here Johnson.

As we pointed out in our original opinion, Johnson brought the instant suit against Sword on October 4, 1951 before the Commissioner had made the final

---

1. The award was amended because it was shown to the Commissioner that Johnson had misstated the term of his employment during the time of his injury. The Commissioner found that Johnson had committed perjury and so stated in his memorandum. We shall deal with this aspect of the case at a later point.

2. Section 33(a) provides: "If on account of a disability or death for which compensation is payable under this chapter the person entitled to such compensation determines that some person other than the employer is liable in damages, he may elect, by giving notice to the deputy commissioner in such manner as the Secretary may provide, to receive such compensation or to recover damages against such third person."

3. Section 33(b) provides: "Acceptance of such compensation under an award * * filed by the deputy commissioner shall operate as an assignment to the employer of all right of the person entitled to compensation to recover damages against such third person."

Section 33(i) provides: "Where the employer is insured and the insurance carrier has assumed the payment of the compensation, the insurance carrier shall be subrogated to all the rights of the employer under this section."

4. Section 33(e) provides: "Any amount recovered by such employer on account of such assignment, whether or not as the result of a compromise, shall be distributed as follows:

"(1) The employer shall retain an amount equal to—

"(A) the expenses incurred by him in respect to such proceedings or compromise (including a reasonable attorney's fee as determined by the deputy commissioner);

"(B) the cost of all benefits actually furnished by him to the employee under section 907;

"(C) all amounts paid as compensation;

"(D) the present value of all amounts thereafter payable as compensation, such present value to be computed in accordance with a schedule prepared by the Secretary, and the present value of the cost of all benefits thereafter to be furnished under section 907 of this title, to be estimated by the deputy commissioner, and the amounts so computed and estimated to be retained by the employer as a trust fund to pay such compensation and the cost of such benefits as they become due, and to pay any sum finally remaining in excess thereof to the person entitled to compensation or to the representatives; and

"(2) The employer shall pay any excess to the person entitled to compensation or to the representative."

award but that over five years had elapsed since the autumn of 1951 and that Lone Star, the assignee, had not brought any suit against Sword. Sword filed a motion for summary judgment, holding that the assignment was a bar against Johnson's right to sue Sword. We reversed, citing Czaplicki v. The Hoegh Silvercloud, 1956, 351 U.S. 525, 76 S.Ct. 946, 100 L.Ed. 1387, pointing out that Lone Star and its insurance carrier, American Insurance, which up to the time of our opinion, had not stated any reason why it had not brought suit, could not be permitted "to stand pouting in a corner like a sulky milkmaid at a barn dance and simply refuse to bring suit without adequate reason", 240 F.2d at page 956.

We remanded the case so that the status of the interests involved might be subject to thorough inquiry by the trial court. Following the remand the deposition of Winfield N. Brown, District Claim Manager for Philadelphia of American Insurance, was taken and is now in evidence. Numerous interrogatories were filed and answered. Upon consideration of a motion for summary judgment the court below concluded that Johnson was not entitled to maintain his suit since there had been no reassignment of the cause of action and entered summary judgment.[5] 1957, 153 F.Supp. 691. The appeal followed.

■ In Czaplicki v. The Hoegh Silvercloud, supra [351 U.S. 525, 76 S.Ct. 950], the Court stated: "In giving the assignee exclusive control over the right of action * * * we think that the statute presupposes that the assignee's intevests will not be in conflict with those of the employee." Thus, the Supreme Court held that in any case in which the longshoreman's right of action is held by the party most likely to suffer were the longshoreman's right of action suc-

cessfully enforced, there is such a conflict of interests as will authorize the injured longshoreman to maintain the third-party action without a reassignment to him by his employer. It follows, therefore, that given a conflict of interest between the employer and the employee and inaction by the statutory assignee, the injured longshoreman may maintain his third-party action even after accepting a formal award without first receiving a reassignment of the claim from his employer.

■ The reasons for the refusal of a reassignment to Johnson are best known to American Insurance which is in a superior position to state those reasons. It seems unjust to impose on the plaintiff, Johnson, the burden of proving American Insurance's state of mind, and its motives and reasons for its refusal to assign the cause of action to Johnson. To impose such a duty on Johnson is to compel him to analyze and to demonstrate an insurance company's subjective motives. Accordingly, since the answer to why American has neither sued Sword Line nor reassigned the claim to Johnson is obviously more readily accessible to American Insurance than to the injured longshoreman we hold that the burden of establishing a valid basis for inaction must be placed upon American.[6] If the burden is not met by the insurance carrier we hold that it will be necessary to presume that a conflict of interest exists.

We take this position for the following reasons. First, the decision in Ryan Stevedoring Company v. Pan Atlantic Steamship Corp., 1956, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133, has demonstrated that under the circumstances of that case the interest of the stevedoring company, its insurance carrier and the employee were of necessity in conflict. The Supreme Court held that a steamship company which was forced to pay dam-

5. Pursuant to Rule 56, Fed.R.Civ.Proc., 28 U.S.C.

6. The Court below stated that Johnson's counsel had taken the position that this burden was on Johnson. In the oral argument in this Court and on the briefs Johnson's counsel denied that he had taken such a position. We are of the view, no matter how the issue was presented, the burden was on American Insurance.

ages to a harborworker who had been injured as a result of the unseaworthy condition of the vessel which he was unloading, a condition created by the stevedoring company, was entitled to recover damages from the stevedoring company. The Court based its ruling on the theory that there is a "warranty of workmanlike service" by the stevedoring company, and, when a ship is rendered unseaworthy by the act of a stevedoring company, there arises by implication a contractual right to indemnity for the benefit of the shipowner. This contractual obligation to perform its duties with reasonable safety relates not only to the handling of cargo but also to the use of equipment incidental thereto. Weyerhaeuser S. S. Co. v. Nacirema Operating Co., 1958, 355 U.S. 563, 78 S.Ct. 438, 2 L.Ed.2d 519. This is not a claim for contribution from a joint tortfeasor and therefore lies without the ruling of the Court in Halcyon Lines v. Haenn Ship Ceiling & Refitting Corp., 1952, 342 U.S. 282, 72 S.Ct. 277, 96 L.Ed. 318. In concluding that the shipowner's right to recovery arose under a right of indemnification, implied contractually, the Court necessarily held that the doctrine of the employer's statutory defense of immunity[7] for liability arising out of the injury was inapplicable to the action since recovery was not based on injury to the employee.[8]

If the facts alleged in the complaint can be proved, substantial issues will be raised as to whether the stevedoring company was concurrently negligent in setting up the wire or caused the ship to be made unseaworthy. Alaska S. S. Co. v. Petterson, 1954, 347 U.S. 396, 74 S.Ct. 601, 98 L.Ed. 798; Rogers v. United States Lines, 1954, 347 U.S. 984, 74 S.Ct. 849, 98 L.Ed. 1120; Grillea v. United States, 2 Cir., 1956, 232 F.2d 919.

In either case the shipowner could implead the stevedoring company, American President Lines v. Marine Terminals Corp., 9 Cir., 1956, 234 F.2d 753, certiorari denied 352 U.S. 926, 77 S.Ct. 222, 1 L.Ed.2d 161; Parenzan v. Iino Kaiun Kabushiki Kaisya, 2 Cir., 1958, 251 F.2d 928, without concern as to an application of the theories of "active" or "passive" as well as "primary" or "secondary" negligence. Weyerhaeuser S. S. Co. v. Nacirema Operating Co., supra, 355 U.S. at page 569, 78 S.Ct. at page 441. Cf. Hagans v. Farrell Lines, Inc., 3 Cir., 1956, 237 F.2d 477.

To sum up: Applying the doctrine of Ryan, if the cause of the longshoreman's injury is the stevedoring company's negligence, the shipowner would be entitled to maintain a separate action against the stevedoring company for indemnification, and this may be so in some instances even though the shipowner was also negligent. Since any recovery by the injured employee against the shipowner could be recouped in an action by the shipowner against the stevedoring company, the practical effect of the Ryan case is to cause the employer-stevedoring companies, who may anticipate a shipowner's claim to indemnity to resist the making of any payment to the injured stevedore until an award is made, at which time assignment of the cause of action by reason of the provisions of the statute takes place. When the statutory assignment has taken place the employer-stevedoring company will then refuse to bring an action against the shipowner, and by the same token would also refuse to reassign the cause of action to the injured stevedore, for to do so might result in an eventual high award by way of indemnification against the stevedoring company and hence against the insurance carrier. See dissenting opinion

---

7. 33 U.S.C.A. § 905 states that the employer's liability to pay compensation " \* \* \* shall be exclusive and in place of all other liability of such employer to the employee \* \* \* and anyone otherwise entitled to recover damages from such employer \* \* \* on account of such injury or death \* \* \* "

8. Earlier cases following the indemnity theory had reached the same conclusions. See Brown v. American-Hawaiian S.S. Co., 3 Cir., 1954, 211 F.2d 16; Crawford v. Pope & Talbot, Inc., 3 Cir., 1953, 206 F.2d 784; Rich v. U. S., 2 Cir., 1949, 177 F.2d 688.

of Mr. Justice Black in Ryan, supra, 350 U.S. at page 135, 76 S.Ct. at page 238. See also, Gilmore & Black, The Law of Admiralty, p. 370.

We therefore are of the opinion that a court is entitled to assume, where there is nothing on the record to demonstrate the contrary, that the assignee of the injured longshoreman's claim, i. e., the stevedoring company and its insurance carrier, are the parties most liable to suffer [9] monetary loss if the claim of the longshoreman was successfully enforced against the shipowner and therefore a conflict of interest must be presumed to exist.

We are confirmed in our view by the fact that, absent such a conflict, the insurance carrier would have nothing to lose and everything to gain by suing or reassigning the claim assigned to it by operation of law. If the employer stevedoring company or its insurer were to prosecute successfully the third-party action against the shipowner, the stevedoring company and its insurance carrier, by the terms of the statute, would be entitled to receive from the amount recovered costs in prosecuting the suit and the amount paid to the injured employee under the compensation award. 52 Stat. 1168 (1938), 33 U.S.C.A. § 933: note 3, supra. If there is a reassignment of the claim to the injured longshoreman and he successfully prosecutes his claim, via a third-party suit, he must return the amount of his compensation award to his employer, the stevedoring company, or to its insurance carrier. The injured longshoreman must himself bear the costs of litigation.

Where the employer stevedoring company or its insurance carrier finds adequate grounds for concluding that the third-party action to be brought against the shipowner by the stevedoring company is not a meritorious one, there is a basis for the employer stevedoring com-

pany or its insurance carrier not to bring suit for the nature of the suit may not justify the expenditure of the funds ordinarily involved in such a litigation. But, this would not necessarily excuse the failure of the employer stevedoring company or its insurance carrier to reassign the claim to the longshoreman. Since the injured longshoreman would bear the costs of litigation, the employer stevedoring company could lose nothing. If the injured longshoreman won his third-party suit the employer stevedoring company or its insurance carrier would be reimbursed to the extent of the compensation award. Accordingly, unless the suit obviously be one lacking in merit we fail to perceive any basis for the refusal of the stevedoring company of its insurance carrier to reassign the claim to the injured longshoreman unless that refusal is based on a fear that the shipowner would implead the employer stevedoring company and it and its insurance carrier would lose more money than they, or either of them, could gain by assigning the claim. See Comment, 30 Temp.L.Q. 347.

■ The record in the instant case is deficient in some respects. It consists in principal part of the deposition of Mr. Winfield M. Brown, taken by Johnson and consists of some ninety pages. Mr. Brown was not a member of the bar but he had had many years of experience as a claims adjuster and was as we have said, the District Claim Manager for American Insurance. There is sufficient in the record to demonstrate his long experience in evaluating longshoreman cases, as the court below stated. 153 F. Supp. at page 661. The data on which he evaluated the merit of Johnson's claim, according to his own admissions, consisted of Lone Star's accident report, two doctors' reports, and copies of the petition and awards of compensation. Only the last two documents mentioned

9. The recovery against the Ryan Stevedoring Company was for $75,000. The compensation paid by Ryan to the injured harborworker and the cost which the employer was entitled to recoup amount to $12,797.36. 350 U.S. at p. 127. The maximum compensation allowed under the Act is $17,280. 33 U.S. C.A. § 914(m) ; July 26, 1956, c. 735, § 5, 70 Stat. 655.

are in evidence. Neither side saw fit to introduce copies of the doctors' reports or of Lone Star's accident report, stated by Brown to contain conflicting statements given by Johnson to the doctors and to the stevedoring company's representative. It will be noted that the Deputy Commissioner found that Johnson knowingly had testified falsely before him and reduced the award by $148.57 because he found that Johnson had been employed during part of the periods for which he had been awarded compensation.

Johnson testified before the Deputy Commissioner to two periods of unemployment because of incapacity, the first from June 29, 1950 to August 19, 1950. No exception seems to have been taken to his testimony as to this first period. But he also testified that he was unemployed from October 16, 1950 to June 27, 1951. The Deputy Commissioner found that he had had one day's employment on October 20, 1950 and that he was unemployed from October 16, 1950 until May 7, 1951, not until June 27, 1951, as he had said. It was on the basis of this statement and, we assume, on the demeanor of Johnson, that the finding that Johnson had knowingly testified falsely, was based. It will be noted that Johnson asserted that he had been unemployed for fifty-two more days than was actually the case. Johnson was injured June 28, 1950. We do not know the exact date on which the Commissioner held the first hearing but his first report was filed on July 12, 1951. But it does appear that Johnson's hearing was a year after the injury. It is not denied that Johnson was injured.

It appears from Brown's deposition that counsel for Sword stated to Brown that he "* * * would recommend to his client that some consideration be given to making some payment to us * * *" if American should decide not to reassign the claim. Counsel for Brown, in a letter to counsel for American, had suggested a "repayment of $200.00" and the assurance that of any net recovery made by Johnson in his suit the balance of American's claim for reimbursement would be paid first. Brown states that he was unaffected by this request and that the refusal of Lone Star or its insurance carrier, American Insurance, to bring suit was based on the conflicting statements, referred to above, given by Johnson to the doctors and to Lone Star's representative, and on the finding by the Deputy Commissioner as to Johnson's false testimony. Brown admitted repeatedly that he had never investigated the facts of Johnson's case, except insofar as the payment of the compensation award was concerned; [10] that he had never interviewed any of the witnesses and had no way of knowing whether Sword was responsible for the injury or could be held to account because of it. He stated that his conclusion as to the lack of merit of Johnson's claim was "somewhat instinctive." It is also interesting to note that the assertion that Johnson's claim was non-meritorious was not made by American Insurance or by Brown, who seems to have been solely in command of the claim and of its possible reassignment, until after the decision of this court on February 1, 1957. It should also be observed that it can be gathered from the deposition and from the record that Johnson was injured while he was in the hold of the vessel and may or may not have been in a position to see what events had happened or to give properly qualified testimony as to the operation of the winches or as to their wiring. Johnson was a member of a stevedoring crew. We may assume that other members of that crew or members of the ship's company were in or around the vicinity of the accident when it took place. The evidence of such witnesses as well as Johnson's own testimony would be pertinent to the inquiry as to how the accident occurred.

10. It will be remembered that no issue of negligence is involved in the successful prosecution of a compensation claim. Brown had no occasion to make any investigation to the possible tort liability of Sword until after the assignment by operation of law of Johnson's claim to Lone Star.

We do not condone Johnson's false testimony before the Deputy Commissioner, if such it was, but we could not go so far as to say that a consciously untruthful statement by Johnson as to length of disability in any way affects the validity of Johnson's substantive claim against Sword. In view of our ruling that the burden of proof is upon Lone Star or American Insurance to demonstrate to the trial court that Johnson's claim is lacking in merit and in the light of Brown's inadequate investigation and his conclusions made without the benefit of the advice of a member of the bar, we cannot say that on the present record Lone Star or American has met the burden of proof which must be imposed upon them. We conclude that the facts at bar demonstrate on analogy to Czaplicki, supra, that a conflict of interests is apparent and that this element added to that of prolonged delay on Lone Star's part in bringing a suit and its refusal to execute a reassignment to Johnson that he is entitled to maintain the suit at bar. We are of the view that the conflict of interest is both apparent and real for Johnson alleges serious injuries and the amount of the damages awarded him might be considerable.[11]

■ Johnson's failure to make an election to sue as required by Section 33(a) of the Act, 33 U.S.C.A. § 933(a), is irrelevant. See the Czaplicki case, supra, 351 U.S. at page 532, 76 S.Ct. at page 950.

The rights of Lone Star or of American Insurance if either or both of them should be impleaded can be protected fully should this suit result in a judgment in Johnson's favor. The amount of the compensation award and the costs which may become due to Lone Star or to American Insurance can be paid into

the court below or that court may adopt, if it should deem it desirable or necessary, a device such as a *trustee ad litem* for these reluctant companies in order to protect them. These are matters which rest in the sound discretion of the court below and we do not presently pass upon them.

The judgment will be reversed.

11. We have not based our judgment upon the theory advanced by Mr. Justice Frankfurter in his concurring opinion in Czaplicki v. The Hoegh Silvercloud, 351 U.S. at page 535, et seq., 76 S.Ct. at page 952, that the stevedoring company and its insurance carrier are to be considered as standing in a fiduciary capacity to the longshoreman. This theory, however, seems to us to be fully tenable. If Lone Star and American Insurance stand in a position substantially similar to that of a trustee to a *cestui que trust* it is abundantly clear that Lone Star and American Insurance could not satisfy a trustee's conscience by the examination of the facts of Johnson's case given by Mr. Brown.