Stevenson McCLENDON, Appellant,

v.

**CHARENTE STEAMSHIP COMPANY,**
Ltd., T & J Harrison, Ltd., et al.,
Appellees.

**No. 21648.**

United States Court of Appeals
Fifth Circuit.

July 12, 1965.

Will Gray, Houston, Tex., for appellant.

E. D. Vickery, Ed Bluestein, Jr., S. G. Kolius, Carl O. Bue, Jr., Houston, Tex., Fulbright, Crooker, Freeman, Bates & Jaworski, Gus A. Schill, Jr., Royston, Rayzor & Cook, Houston, Tex., of counsel, for appellees.

Before BROWN and BELL, Circuit Judges, and HUNTER, District Judge.

GRIFFIN B. BELL, Circuit Judge:

Appellant McClendon was injured in September 1959 when he slipped and fell while working as a longshoreman aboard the SS Advisor, a vessel owned and operated by appellees Charente Steamship Company Ltd., and T & J Harrison, Ltd. McClendon pursued his rights to compensation under the Longshoremen's and Harborworkers' Compensation Act, 33

U.S.C.A. § 901 et seq., against his stevedore-employer, Texas Contracting Company, and its insurance carrier, Texas Employer's Insurance Association. On February 4, 1961, McClendon received a formal compensation award in the amount of $5,041.

More than six months later—on August 17, 1961—McClendon instituted the present suit against Charente and Harrison alleging that his injuries resulted from the negligence of the owners and operators and from the unseaworthiness of the vessel. The Texas tort statute of limitations would have expired in about a month. Charente and Harrison then brought in Texas Contracting Company as a third party defendant and claimed indemnity based on the stevedore's implied warranty of workmanlike service. Texas Employer's Insurance Association was brought in by order of the District Court in order that all parties in interest might be represented.

Section 933 of Title 33 is the portion of the Longshoremen's and Harborworkers' Compensation Act concerned with employee rights of action against third party tort-feasors. Subsection (b) of that section provides that acceptance of a compensation award shall operate as an assignment to the employer "of all right of the person entitled to compensation to recover damages against such third person unless such person shall commence an action against such third person within six months after such award." Charente and Harrison moved to dismiss the suit on the grounds that six months having elapsed since the award, McClendon's cause of action has been assigned to his employer. Thus, they contended that Texas Contracting and its subrogated insurance carrier were the real parties in interest. Texas Contracting and its insurer joined Charente and Harrison in support of the motion to dismiss.

McClendon countered by alleging a conflict of interest between himself and his employer-assignee and its insurer, and contended that in such circumstances, § 933(b) did not bar suit by the employee beyond the six month deadline. The District Court, however, construed § 933(b) as barring suits beyond six months regardless of a conflict of interest and dismissed the complaint. McClendon v. Charente Steamship Co., S.D.Tex., 1964, 227 F.Supp. 256. McClendon appeals.

Charente and Harrison rest their case on what they contend is the plain and unequivocal language of § 933(b). McClendon's contention that no such limitation applies where there is a conflict of interest between the employee and his assignee is based on the Supreme Court's decision in Czaplicki v. The Hoegh Silvercloud, 1956, 351 U.S. 525, 76 S.Ct. 946, 100 L.Ed. 1387, a case decided under § 933(b) as it stood prior to the 1959 amendments. Charente and Harrison take the view that the 1959 amendments to § 933(b) legislatively overruled the Czaplicki conflict of interest doctrine.

Prior to 1959, § 933(a) required the injured employee to elect whether to accept compensation benefits or to pursue his common law remedy against the third party. Section 933(b) provided that acceptance of compensation operated as an immediate assignment by operation of law to the employer of the employee's right of action. The employee retained an equity in the third party tort claim however, for under § 933(e), if the employer-assignee successfully pursued the third party action, any recovery over and above expenses of litigation and the compensation payment were paid over to the employee. The theory of putting the employee to an election was that the interest of the employer or its insurance carrier in recovering the compensation payment would coincide with the interest of the employee in pursuing his claim against the third party tort-feasor, and that since the employer's indemnity came before the interest of the employee, control over the litigation should be vested in the employer.

This was the context in which the Supreme Court decided Czaplicki v. The Hoegh Silvercloud, supra. There an injured longshoreman accepted compensation benefits, thus causing immediate assignment of his claim to his stevedore-

employer. When the employer failed to pursue the claim, Czaplicki filed suit himself against the vessel, the owner, the operator, and the Hamilton Marine Contracting Company, the manufacturer of the steps which caused Czaplicki's injury. The stevedore's subrogated insurance carrier, Traveler's Insurance Company, was also the insurer for Hamilton. Thus, there was a clear conflict of interest between Czaplicki and Traveler's, since if ultimate liability fell on Hamilton, the suit by Traveler's would be in effect a suit against itself. The Supreme Court held that given a conflict of interest and inaction by the assignee, the statutory assignment under § 933(b) did not bar suit by the employee in his own name. The Court stated:

> "Travelers was also the insurer of Hamilton, one of the third parties subject to suit. Hamilton had constructed the steps on which the accident occurred, and might be held liable if its negligence was the cause of Czaplicki's injuries; it might also be subject to a claim over by (the owner or the operator of the vessel) if either of them should be held liable. Cf. Ryan Stevedoring Co. v. Pan-Atlantic S.S. Corp., 350 U.S. 124, 76 S.Ct. 232 [100 L.Ed. 133]. The result is that Czaplicki's rights of action were held by the party most likely to suffer were the rights of action to be successfully enforced. In these circumstances, we cannot agree that Czaplicki is precluded by the assignment of his rights of action from enforcing those rights in an action brought by himself.

> " * * * In giving the assignee exclusive control over the right of action * * * we think that the statute presupposed that the assignee's interests will not be in conflict with those of the employee, and that through action of the assignee the employee will obtain his share of the proceeds of the right of action, if there is recovery. Here, where there is such a conflict of interests, the inaction of the assignee operates to defeat the employee's interest in any possible recovery. Since an action by Travelers would, in effect, be an action against itself, Czaplicki is the only person with sufficient adverse interest to bring suit. In this circumstance, we think the statute should be construed to allow Czaplicki to enforce, in his own name, the rights of action that were his originally."

In 1959 § 933 was amended. The election requirement of § 933(a) was abolished, and § 933(b) was altered to provide for assignment by operation of law only if the employee failed to bring suit himself within six months of the compensation award. Furthermore, § 933(e) was changed to provide that the employer could retain one-fifth of the excess recovery itself. This latter measure was designed as an incentive for the employer to vigorously represent the interest of the employee and not to compromise the third party claim for the amount of the compensation award.[1]

1. Prior to 1959, 33 U.S.C.A. § 933(a) and (b) read:

"(a) If on account of a disability or death for which compensation is payable under this chapter the person entitled to such compensation determines that some person other than the employer is liable in damages, he may elect, by giving notice to the deputy commissioner in such manner as the Secretary may provide, to receive such compensation or to recover damages against such third person."

"(b) Acceptance of such compensation under an award in a compensation order filed by the deputy commissioner shall operate as an assignment to the employer of all right of the person entitled to compensation to recover damages against such third person."

After the 1959 amendments, these subsections read:

"(a) If on account of a disability or death for which compensation is payable under this chapter the person entitled to such compensation determines that some person other than the employer or a person or persons in his employ is liable in damages, he need not elect whether to receive such com-

Charente and Harrison contend that the 1959 amendments provided a statutory solution to the problem of conflict of interest judicially recognized in Czaplicki. The solution, they contend, was to allow the employee six months in which to sue, and to foreclose suit beyond that point even in conflict of interest situations. McClendon argues that Congress in 1959 was concerned only with eliminating the hardship caused by the election requirement which forced the employee to forego compensation benefits if he elected to sue the third party. The remedy, according to McClendon, was to abolish the election requirement and allow the employee to accept compensation and still bring suit himself within six months. After six months, the right to sue is transferred to the employer in order to safeguard its recoupment interest. However, McClendon argues, an equity in the claim remains with the employee just as under the pre-1959 law; hence, once the right to sue has passed to the employer, Czaplicki is as controlling now as before. Given a conflict of interest, the employee should be allowed to sue in his own name, limited only by the applicable state tort statute of limitations or laches.

Thus, the crucial question in this case is the effect of the 1959 amendments on the Czaplicki doctrine. The District Court held that Czaplicki had been legislatively overruled; that after six months the employee's right to sue ceased absolutely even in conflict of interest cases. We are constrained to disagree, and we hold, in line with Czaplicki, that where there is a conflict of interest and inaction by the assignee, the employee may sue notwithstanding the statutory assignment under § 933(b).

Our reasoning begins with the basic proposition that the Longshoremen's and Harborworkers' Compensation Act is to be liberally construed in favor of the injured employee. Voris v. Eikel, 1953, 346 U.S. 328, 74 S.Ct. 88, 98 L.Ed. 5; Pillsbury v. United Engineering Co., 1952, 342 U.S. 197, 72 S.Ct. 223, 96 L.Ed. 225. The legislative history of the 1959 amendments is not particularly revealing, but does by negative inference support the view that no alternation of the Czaplicki doctrine was intended. The committee reports state that the purpose of the amendments was to eliminate the election requirement and allow the employee to sue the third party tort-feasor without forfeiting his right to compensation payments. S.Rep.No. 428, 86th Cong., 1st Sess.; U. S. Code Cong. and Admin.News 1959, p. 2134. See also H.R.Rep.No. 229, 86th Cong., 1st Sess. There is no statement of intention to overrule the Czaplicki doctrine; nor is that decision specifically mentioned.

Appellees rely on various general statements in the legislative history such as that the 1959 bill "carefully protects the interests of all who are involved and balances the equities." S.Rep.No. 428, 86th Cong., 1st Sess.; U.S.Code Cong. and Admin. News 1959, p. 2135. Congress, they argue, was concerned over the inroads on the employer's limited liability stemming from Ryan Stevedoring Co. v. Pan Atlantic S.S. Corp., 1956, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133, which allows claims over by the shipowner on the stevedore's implied warranty of workmanlike service. From this, they contend that Congress intended to "balance the equities" by insulating the third party from suit after six months, thus derivatively insulating the employer from claims over under the Ryan doctrine. We are unable to read so much into so little. Aside from the palpable ambiguity of the phrase "balance the equities," there is no support in the legislative history for the view that Congress intended to mitigate the Ryan doc-

pensation or to recover damages against such third person."

"(b) Acceptance of such compensation under an award in a compensation order filed by the deputy commissioner shall operate as an assignment to the employer of all right of the person entitled to compensation to recover damages against such third person unless such person shall commence an action against such third person within six months after such award."

trine. Moreover, it taxes credulity to believe that Congress would have attenuated Ryan in such a roundabout and imprecise manner and in a manner which necessarily carries the concomitant of protecting third party tort-feasors. In our view, Congress balanced the equities simply by abolishing the harsh election requirement while preserving to the employer his opportunity to seek recoupment after six months. This is the burden of the legislative history. There is no support for the view of the District Court that Congress intended to provide a solution to the conflict of interest question.

Unable to garner support from the legislative history, appellees are thrown back on the bare language of the statute. This language, they contend, admits of no exceptions and precludes the construction which we here adopt. The short answer is that the statutory language with respect to the assignment was no less unequivocal under the pre-1959 law, and that we go no further than did the Supreme Court in Czaplicki. We simply hold that the conflict of interest exception enunciated by the Supreme Court in Czaplicki survived the 1959 amendments.

The 1959 amendments did not change the nature of the assignment; they merely delayed its operation for six months. The essence of Czaplicki was that while an equity in the third party claim was preserved to the injured employees, absolute assignment in a conflict of interest situation deprived him of all opportunity of recovery. Under the post-1959 law, the equity in the claim remains with the employee, and once the six months period has passed, absolute assignment would again bar his recovery. Hence, the rationale of Czaplicki is as compelling now as before. Appellees answer that unlike the situation in Czaplicki, the employee under the 1959 amendments has his chance for six months. Therefore, they argue, there is no necessity for the conflict of interest exception to the statutory assignment. By the same token, however, there is neither necessity nor any good reason to abolish the conflict of interest

exception, since the prime beneficiary would be the third party tort-feasor. Of course, it may be argued that the liability is really against the employer in view of the implied contractual obligation arising under Ryan, supra, but it is not to be supposed that there is liability under the Ryan doctrine in every case where an employee recovers against the ship. Congress must have been of like mind when it also amended § 933(e) in 1959 to award the employer one fifth of the net excess recovery. Thus, we are unable to attribute to Congress an intention to restrict the employee's right of recovery against third parties.

The practical effect of the construction urged by appellees is that in conflict of interest situations, the tort-feasor reaps the benefit of an unusually short statute of limitations—six months plus the interval between injury and compensation award. No reason is suggested why Congress, in legislation designed to alleviate the plight of injured employees, would want to confer such a boon on third party tort-feasors. The entire thrust of the 1959 amendments was to facilitate recovery against the third party. As noted, the election requirement was abolished, the employee was allowed to sue in his own behalf, and the employer was given a one-fifth equity in the net recovery. And it cannot be controverted that the purpose of this latter provision was to encourage the employer to pursue the claim against the third party for the benefit of the employee. S.Rep.No. 428, 86th Cong., 1st Sess.

The purpose of the assignment of the employee's cause of action to the employer, in both pre and post-1959 law, is to enable the employer to recoup its compensation payment against the third party tort-feasor. As stated by the Court in Czaplicki:

"Since the assignee's right to recoup comes before the employee's interest, and because the assignee is likely to be in a better position to prosecute any claims against a third party, control over the right of action is given to the assignee * *."

Where there is in fact a conflict of interest and the employer intends to merely sit on the cause of action until the limitations period runs, no purpose whatsoever is served by vesting exclusive control over the litigation in the assignee—except that of insulating the third party from suit, and we decline to attribute such an intention to Congress. Under the construction we adopt, the employer's right of recoupment is fully protected; if the assignee desires to pursue the third party action, it may do so to the exclusion of the employee. We only hold that where, because of conflict of interest, the employer fails to sue, the employee himself is free to pursue his remedy against the third party tort-feasor.

We are supported in our construction by the recent decision of the District of Columbia Circuit in Potomac Electric Power Co. v. Wynn, 1965, 343 F.2d 295, slip opinion dated January 8, 1965, and by Castro v. United States, D.P.R., 1964, 230 F.Supp. 967. The District of Columbia Circuit held that the employee may bring suit after the six months period whenever it is evident that the employer, for whatever reason, does not intend to bring suit. The court thus dispensed with the requirement of Czaplicki that a conflict of interest be demonstrated. We do not go this far. Judge Wright, concurring specially, expressed a view very close to that which we adopt. In his view, Czaplicki and its conflict of interest requirement still controlled, but that under Czaplicki, a conflict of interest was demonstrated simply by the possibility of a claim over by the shipowner against the stevedore under the Ryan case. We agree with Judge Wright except that we are not convinced that the mere possibility of a claim over will in every case establish a conflict of interest. Whether or not there is in fact a conflict of interest is a matter to be determined with reference to all the facts of each particular case.

Here, the District Court found it unnecessary to reach the question of whether there was in fact a conflict of interest between McClendon and appellees since it construed § 933(b) to bar employee suits in all events after six months. In view of our holding to the contrary, the proper course is to reverse and remand for consideration of the conflict of interest question.

McClendon also filed below a second cause of action alleging that Texas Contracting, Texas Employer's Insurance Association, Charente, and Harrison all conspired to deprive him of his rights against the third party tort-feasors. The District Court felt, and apparently all parties agreed, that in view of the court's disposition of the first cause of action, the second cause of action was moot. Because of our holding that the court erred in its construction of § 933, but without indicating any opinion as to the merits of the second cause of action, we vacate its dismissal for such reconsideration and action as may be appropriate on remand.

Reversed in part; vacated in part; and remanded for further proceedings not inconsistent herewith.

JOHN R. BROWN, Circuit Judge (concurring).

I concur fully but would add these comments by way of emphasis.

The plight of the stevedore-employer caught in the Sieracki-Ryan-Yaka maelstrom is indeed an unhappy one undoubtedly deserving of congressional solicitude. But there is no indication that concern for him was behind the 1959 amendments or, if so, that Congress dispensed its grace by prescriptive-limitation largesse to strangers—the allegedly tortious third party ship or shipowner.

True, a 20% interest in the excess recovery was thrown out as bait, but a discerning stevedore-employer is no more likely to rise to this than to the beguiling lure of pre-1959 recoupment. In either case, he's hooked. Strachan Shipping Co. v. Melvin, 5 Cir., 1964, 327 F.2d 83 (dissenting).

And as to a supposed protection to the employer-stevedore or the tortious third party shipowner it is of no real value as a built-in sometime available, prescriptive limitation period. Except for death cases

and in a few other rare injury situations cases under the Longshoremen's Act are processed frequently without formal claim and almost invariably without a final formal award by the Deputy Commissioner. Atlantic & Gulf Stevedores, Inc. v. Donovan, 5 Cir., 1960, 274 F.2d 794, 800; 279 F.2d 75. Of course only a final award triggers the 6 month period. Consequently as to most cases the tortious third party remains vulnerable until the appropriate state-federal-local-maritime statute of limitations or laches cuts off the claim.

The 1959 amendment helps neither the distraught stevedore-employer or the harried third party in any predictable, meaningful, regular way. This eliminates all save the injured worker as the object of congressional concern. As to him, the purpose was to expand, not contract, his rights.