Melvin BANDY, Plaintiff,

v.

BANK LINE LTD., Defendant.

Civ. A. No. 77–716–N.

United States District Court,
E. D. Virginia,
Norfolk Division.

Dec. 30, 1977.

C. Arthur Rutter, Jr., Breit, Rutter & Montagna, Norfolk, Va., for plaintiff.

John R. Crumpler, Jr., Seawell, McCoy, Dalton, Hughes, Gore & Timms, Norfolk, Va., for defendant.

## OPINION AND ORDER

CLARKE, District Judge.

The plaintiff, an employee of a stevedoring company, was injured while working as a longshoreman on a vessel owned and operated by the defendant. The injury occurred on the waterfront in Newport News, Virginia, within the jurisdiction of this Court.

In this action the injured longshoreman, alleging negligence, is seeking recovery from the owner of the vessel. The plaintiff admits that this action was filed more than six months after termination of the statutorily required compensation payments made by the employing stevedore to the longshoreman. The case is presently before the Court on the defendant's Motion for Summary Judgment on the ground that. the plaintiff has no cause of action.

It is the defendant's position that the plaintiff's failure to bring an action against the vessel owner within six months of termination of compensation payments[1] resulted in a statutory assignment from the injured longshoreman to the employing stevedore of the exclusive right to proceed

against the vessel owner pursuant to section 33(b) of the Longshoremen's and Harbor Workers' Compensation Act [hereinafter cited as LHWCA], 33 U.S.C. § 933(b).

The plaintiff asserts that six months after a compensation award the assignment under 33 U.S.C. § 933(b) creates in the employing stevedore a superior but not exclusive right to seek recovery from third persons allegedly responsible for the longshoreman's injuries. The plaintiff refers to a line of cases beginning with *Czaplicki v. The Hoegh Silvercloud*, 351 U.S. 525, 76 S.Ct. 946, 100 L.Ed. 1387 (1956), as authority for the proposition that when there is a conflict of interest between the longshoreman and the employing stevedore and when the stevedore does not proceed against the third person, the longshoreman will be allowed to bring an action against that third person more than six months after a compensation award has been made.

The defendant's position with regard to that contention is that the 1972 amendments to the LHWCA have removed the traditional conflict of interest that was created by indemnification of vessel owners by stevedores, and that therefore the pre-1972 cases, which recognize that conflict and allow a longshoreman to institute an action more than six months after a compensation award, are inapplicable here.

Section 33(b) of the LHWCA, 33 U.S.C. § 933(b), reads:

(b) Acceptance of such compensation under an award in a compensation order filed by the deputy commissioner or Board shall operate as an assignment to the employer of all right of the person entitled to compensation to recover damages against such third person unless such person shall commence an action against such third person within six months after such award.

The plain language of the statute is clear: unless the longshoreman brings an action against a vessel owner within six months,

[1] An informal award was made to the plaintiff. The informality of the award, however, does not affect the application of section 33(b) of the LHWCA. *Liberty Mutual Insurance Co. v. Ameta & Co.*, 564 F.2d 1097 (4th Cir., 1977).

he loses the right to bring such an action and must rely on his employer, the stevedore, to bring the action, if one is to be brought. In most circumstances, the longshoreman would be entitled to a portion of any recovery had by his employer, 33 U.S.C. § 933(e).

Although the United States Supreme Court in *Czaplicki v. The Hoegh Silvercloud*, 351 U.S. 525, 76 S.Ct. 946, 100 L.Ed. 1387 (1956), recognized the exclusivity of the assignment under 33 U.S.C. § 933(b),[2] the Court created an exception to that exclusivity.

> In giving the assignee exclusive control over the right of action, however, we think that the statute presupposes that the assignee's interests will not be in conflict with those of the employee. . . . Here, where there is such a conflict of interests, the inaction of the assignee operates to defeat the employee's interest in any possible recovery. . . . In this circumstance, we think the statute should be construed to allow Czaplicki to enforce, in his own name, the rights of action that were his originally.

*Id.* at 531, 76 S.Ct. at 950. The Court stated the basis for the determination of conflict of interest: the compensation carrier of the employer in *Czaplicki* was also the insurer of the third party defendant most likely to be held liable. "The result is that Czaplicki's rights of action were held by the party most likely to suffer were the rights of action to be successfully enforced." *Id.* at 530, 76 S.Ct. at 949. The Supreme Court determined that

> Czaplicki can bring this suit not because there has been no assignment, but because in *the peculiar facts* here there is no other procedure by which he can secure his statutory share in the proceeds, if any, of his right of action.

*Id.* at 532–33, 76 S.Ct. at 951 (emphasis added). The effect of the decision in *Czaplicki*, however, extended far beyond "the peculiar facts" of that case.

2. *Czaplicki* was decided before the 1959 amendments to the LHWCA. Prior to 1959, acceptance of a compensation award by an employee resulted in an immediate assignment

In *Johnson v. Sword Line, Inc.*, 257 F.2d 541 (3d Cir. 1958), the Third Circuit reached the same result as the Supreme Court had in *Czaplicki* even where there was no identity of insurance carriers. The Court had commented, in an earlier opinion in the same case, that the employer and the employer's compensation carrier

> may not be permitted to stand pouting in a corner like a sulky milkmaid at a barn dance and simply refuse to bring suit without adequate reason.

*Johnson v. Sword Line, Inc.*, 240 F.2d 954, 956 (3d Cir. 1957). The Court, in its later opinion, required the compensation carrier, who was not a party to the action, to prove no conflict of interest. In the absence of such proof, the injured longshoreman would be allowed to proceed.

Failure to bring an action was translated in *Johnson* into a prima facie showing of conflict of interest. *See* 257 F.2d at 545–46. The translation, however, was not without basis. Under *Ryan Stevedoring Co. v. Pan Atlantic Steamship Corp.*, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956), a vessel owner found liable to a longshoreman injured as a result of the unseaworthy condition of the vessel was entitled to recover damages, when appropriate, from the stevedore under a theory that by a breach of the warranty of workmanlike service the stevedore or its employees caused or contributed to cause the condition on the vessel which gave rise to the longshoreman's recovery. This contractual or warranty of workmanlike service obligation to indemnify the vessel owner, in conjunction with 33 U.S.C. § 933(b), had the practical effect of putting the assignee employer in a position where by suing the vessel owner to recoup its compensation payments it exposed itself to possible claim for indemnification of a larger judgment against the vessel owner. The result is a corollary of Judge Brown's observation in *Strachan Shipping Co. v. Melvin*, 327 F.2d 83 (5th Cir. 1964) (dissenting):

> to the employer. It has been held that the *Czaplicki* reasoning applies to section 33 of the LHWCA after 1959. *McClendon v. Charente Steamship Co.*, 348 F.2d 298 (5th Cir. 1965).

In this sometime weird Ryan-Yaka world, there is only one thing certain: no stevedore in his right mind wants, or encourages, a suit by an injured employee against a third party vessel or vessel owner.

*Id.* at 90.

The expansion of *Czaplicki* in *Johnson* was not unique. The Court in *Smith v. A. H. Bull Steamship Co.*, 208 F.Supp. 172 (D.Md.1962), borrowed heavily from *Johnson* and required a heavy burden of proof from the insurance carrier, who was the third party defendant, to establish that conflict of interest was not a factor in the decision not to sue the vessel owner.

·Where the factual situation was similar to *Czaplicki*, the courts that considered the conflict of interest exception to 33 U.S.C. § 933(b) could rely on the identity of the insurance carriers for the vessel owner and the employer to establish conflict of interest, *Castro v. United States*, 230 F.Supp. 967 (D.P.R.1964). But where that coincidence did not occur, the courts either (1) maintained, without explanation of the manner of proof, that where there is conflict of interest the longshoreman may proceed more than six months after a compensation award, *McClendon v. Charente Steamship Co.*, 348 F.2d 298 (5th Cir. 1965); *White v. United States*, 507 F.2d 1101 (5th Cir. 1975); or (2) followed the line of cases from *Johnson v. Sword Line, Inc., supra*, that expanded the exception from peculiar facts that could establish a conflict of interest to a presumption of conflict of interest whenever the employing stevedore does not sue the vessel owner, *Allen v. United States*, 235 F.Supp. 950 (N.D.Cal.1963), aff'd, 338 F.2d 160 (9th Cir. 1964), *cert. denied*, 380 U.S. 961, 85 S.Ct. 1104, 14 L.Ed.2d 152 (1965).[3]

The furthest distance traveled to protect the employee's right of recovery was by the D.C. Circuit in *Potomac Electric Power Co. v. Wynn*, 120 U.S.App.D.C. 13, 343 F.2d 295 (1965), where it was held that a showing of conflict of interest was not a prerequisite to a suit by a longshoreman more than six months after a compensation award. The Court concluded that the 1959 amendments to the LHWCA exhibited an intent to facilitate the employee's access to recovery noting that section 33(a) of the LHWCA eliminated election between statutory and common law remedies, that section 33(b) established a six-month grace period during which the employee had the exclusive right to proceed against third parties and that the twenty percent share of the net recovery awarded the employer in section 33(e) created an incentive to protect the employee's rights. The Court not only determined that it would be a burden inconsistent with the purposes of the amendments to require an employee seeking recovery from a third party to prove his employer's conflict of interest, but more importantly the Court stated that

> even if the employer-assignee had "proper motives" or did not abuse a "fiduciary duty to the employee" in failing to sue the third party, no statutory purpose would be served in precluding the employee from suing. . . . The statute is not designed to protect third parties from suit.
>
> .   .   .   .   .
>
> . . . [T]he employee may bring suit against a third party whenever it is evident that the employer-assignee, *for whatever reason*, does not intend to bring suit.

*Id.* 120 U.S.App.D.C. at 16, 343 F.2d at 298 (emphasis added). Other courts have not gone so far.

The question before the Court is the state of the conflict of interest exception to 33 U.S.C. § 933(b) after the 1972 amendments to the LHWCA. There are four alternative answers to that question: (1) no exception exists, as argued by the defendant, relying on the strict language of the statute; (2) the original, narrow *Czaplicki* conflict of interest exception exists; (3) there is a presumption of conflict of interest, *Johnson v.*

---

3. The facet of *Johnson* that required the non-party employer or its compensation carrier to justify the failure to bring suit was not, however, adopted by other courts.

*Sword Line, Inc., supra*; or (4) there is an exception, regardless of the existence of conflict of interest wherever the employer fails to pursue a claim, *Potomac Electric Power Co. v. Wynn, supra.*

The Court rejects the first alternative as not in keeping with the purpose of the Act, to help longshoremen. *Reed v. The Yaka*, 373 U.S. 410, 83 S.Ct. 1349, 10 L.Ed.2d 448 (1963), and as not in conformance with the liberal rule of construction that applies to the LHWCA and other workmen's compensation acts, *Voris v. Eikel*, 346 U.S. 328, 74 S.Ct. 88, 98 L.Ed. 5 (1953). The Court rejects the fourth alternative as entirely inconsistent with the plain language of 33 U.S.C. § 933(b).

A presumption of conflict of interest, as represented in the third alternative, may have been a reasonable and expeditious way in which to perceive the recalcitrance of assignee employers before 1972, brought about by the combination of *Seas Shipping Co. v. Sieracki*, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946), which held that a vessel owner was liable to a longshoreman for injuries caused by an unseaworthy condition on the vessel and *Ryan, supra*, which held that the vessel owner could bring an action against the stevedore for the damages it paid the longshoreman on the theory that the stevedore caused or contributed to cause the injury causing unseaworthy condition. This Court determines that the 1972 amendments to 33 U.S.C. § 933(b) eliminated the stevedore's previous nearly automatic susceptibility to indemnity action and thereby eliminated the necessity of the presumption of conflict theory. As amended in 1972, section 905(b) allows an injured longshoreman to bring a third party action against a vessel owner for negligence but not for unseaworthiness. Furthermore, under amended section 905(b), the employing stevedore is not liable, directly or indirectly (e. g., through an indemnity action), for damages recovered against a vessel owner in such a negligence action.

The elimination of the indemnity action defeats the traditional reasons for the presumption of conflict of interest and legisla-

tively overrules *Sieracki* and *Ryan*. The plaintiff, however, argues that the presumption should still exist because of other factual situations which could amount to conflict of interest, such as the dependence of stevedores on business from vessel owners and the likelihood of identity of insurance carriers. Thus, while *Sieracki* and *Ryan* are dead, *Czaplicki* and its progeny are still alive. The Court does not find it reasonable to assume that such factual situations posed by the plaintiff will exist with such frequency to justify a presumption of conflict of interest.

This Court asserts its commitment to the exception to the six months' rule for conflict of interest in 33 U.S.C. § 933(b) as originally stated by the United States Supreme Court in *Czaplicki, supra*. Where there is established conflict of interests and inaction by the assignee employer, the employee should retain the right to proceed against third party tort-feasors beyond six months after the compensation award. The Supreme Court in *Czaplicki* expressly overruled a Fourth Circuit opinion, *Hunt v. Bank Line*, 35 F.2d 136 (4th Cir. 1929), that did not allow for such an exception.

█ This Court holds that where a conflict of interest deters an employing stevedore or any assignee employer from full pursuit of a claim for injuries suffered by a longshoreman and assigned to it under 33 U.S.C. § 933(b), and where the stevedore does not act to pursue the claim, the longshoreman retains a right to proceed in his own behalf beyond six months after a compensation award. The conflict of interest must be established by proof of particular facts in the case at bar that operate to deter the employing stevedore. The proof is not limited, however, to establishing a common insurance carrier. Other facts, such as suggested by the plaintiff, may be shown that contribute to a stevedore's reluctance to pursue a non-frivolous claim against a vessel owner.

It seems proper to this Court that the burden should be on the plaintiff to produce such evidence. The Congress gave the injured employee six months from the award

of compensation in which to make a determination whether or not to sue the third party. If the injured employee fails to act within six months, he should have the burden of establishing his right to proceed to suit in the face of the clear language of the statute.

In order to survive a Motion for Summary Judgment, the plaintiff must present an issue of fact as to the employing stevedore's conflict of interest. Discovery as is appropriate and necessary to meet this burden will be allowed.

The Court having determined that there may be a genuine issue as to a material fact the Motion for Summary Judgment is DENIED. If, after discovery on the issue of conflict of interest, the defendant deems it proper to do so, it may file a new motion for summary judgment.

Because of the possibility of this issue arising with some frequency in this area, I have consulted my fellow judges in this division and they have authorized me to say that they concur with this opinion.