**Linwood LARSON, Plaintiff,**

v.

**ASSOCIATED CONTAINER TRANS-PORTATION (AUSTRALIA) LTD., Defendant.**

**Civ. A. No. 78–271–N.**

United States District Court,
E. D. Virginia,
Norfolk Division.

Sept. 18, 1978.

Rabinowitz, Rafal & Swartz, Norfolk, Va., for plaintiff.

Seawell, McCoy, Dalton, Hughes, Gore & Timms, Norfolk, Va., for defendant.

## OPINION AND ORDER

CLARKE, District Judge.

Plaintiff, a longshoreman, claims he was injured while performing duties on board defendant's vessel while the vessel was working cargo at Norfolk, Virginia, on September 30, 1977. Pursuant to the provisions of the Longshoremen's and Harbor Workers' Compensation Act, plaintiff received compensation from his stevedore employer from October 1, 1977, to June 11, 1978. Plaintiff filed his complaint against the shipowner on June 2, 1978, claiming his injuries were caused by a condition on the ship brought about by the negligence of the ship's crew.

Section 33(b) of the LHWCA provides:

(b) Acceptance of such compensation under an award in a compensation order filed by the deputy commissioner or Board shall operate as an assignment to the employer of all right of the person entitled to compensation to recover damages against such third person unless such person shall commence an action against such third person within six months after such award.

This Court has held that unless the injured longshoreman can establish a conflict of interest which would inhibit the stevedore or its insurance carrier in bringing an action against the alleged negligent third party[1] the assignment provided by the Act is binding on the longshoreman. *Melvin Bandy v. Bank Line Ltd.,* 442 F.Supp. 882 (1977).

This matter is now before the Court on defendant shipowner's motion for summary judgment wherein the defendant contends that plaintiff's failure to bring this action within six months from the institution and acceptance of compensation resulted in a statutory assignment from the injured longshoreman to the employing stevedore, Old Dominion Stevedoring Company, of the right of action to proceed against the vessel owner pursuant to section 33(b) of the LHWCA. 33 U.S.C. § 933(b).

■ The issue before the Court is whether the six-month period, in which an injured longshoreman may institute suit against a third person for recovery before a statutory assignment occurs, began to run upon the initial payment and acceptance of compensation by the plaintiff or at some later date. If the period properly commenced upon the initial payment and acceptance of compensation, the plaintiff's suit instituted on June 2, 1978, occurred after the statutory assignment and the defendant's motion must be granted.

The crux of the issue in this case turns on a determination of if, and when, an "award" was made. Plaintiff relies on *Liberty Mutual Insurance Company v. Ameta & Company,* 564 F.2d 1097 (4th Cir. 1977), wherein the court held that an "award" need not be a formal award to bring about a statutory assignment of rights under section 33(b). Rather the crucial factor in determining whether an award has been made is whether there has been "some act of ratification of compensation, whether formal or informal, and the subsequent acceptance of compensation by the claimant." *Id.* at 1102.

In *Liberty Mutual,* the court held that the documents (consisting of the employer's report of the injury and report of payment of compensation without an award, an attending physician's report, and the report that compensation payments were stopped or suspended) received, filed and accepted by the deputy commissioner constituted suf-

---

1. As this Court held in *Bandy v. Bank Line Ltd.,* 442 F.Supp. 882 (E.D.Va.1977), there is no statutory assignment even under the provisions of section 33(b) where a conflict of interest would deter the assignee from full pursuit of the injuries suffered by the assignor-longshoreman. The *Bandy* decision, however, also makes clear that the burden of establishing such a conflict rests on the longshoreman. *Id.* at 886–87. Since there has been no suggestion of such a conflict by the plaintiff even after the defendant raised the issue in its motion for summary judgment by alleging that there is no conflict in this case, this Court must find that no such conflict exists.

ficient action and determination by the deputy commissioner granting benefits to the longshoreman to constitute an "award." *Id.* at 1103, 1101 n.10. The court, however, did not state explicitly when the "award" was made so as to start the six-month period running.[2] Nevertheless, the *Liberty Mutual* court made absolutely clear that an "award" that commences the running of the six-month period need not be a formal award entered by the deputy commissioner or the Benefits Review Board.

Under the holding of *Liberty Mutual* and the facts of this case, there are at least three possible events that could be deemed to constitute an informal award so as to commence the running of the six-month period: the initial payment of compensation and acceptance by the injured longshoreman; the termination of the payment of compensation by the employer; and some event intervening between these other two occurrences.[3]

The Court rejects the contention that the termination of benefits by the employer is necessary to commence the running of the six-month period. Such a result would run counter to the clear purpose of the LHWCA to provide prompt payment and medical services to injured longshoremen during the period immediately following the disability when the need for such assistance is the greatest. If the termination of benefits is necessary to constitute an award, the employer would have an imperative incentive either to controvert liability or quickly suspend benefit payments in order to protect its statutory right to an assignment and subrogation. This situation would be especially prevalent where a longshoreman is seriously injured and compensation payments would continue for an extended period, perhaps even beyond the statute of limitations for recovery against third persons for the underlying injury.

The language in section 33(b) "under an award in a compensation order filed by the deputy commissioner" was added by the 1938 amendment to the statute. The purpose behind the addition of that language is clear. Prior to the addition of that language, the mere acceptance of compensation worked automatically and immediately an assignment to the employer of all rights of action against third party tort feasors. The amendment gave the injured person the opportunity to consider the acceptance of compensation from the employer with the resulting loss of right to bring suit in damages against the third party, or refusal of compensation so as to pursue the remedy against the third party allegedly liable for the injury. H.R.Rep. No. 1945, 75th Cong., 3d Sess. 9 (1938), *entitled,* "Amending the Longshoremen's and Harbor Workers' Compensation Act."

The philosophy behind the present statute becomes even more clear when one looks to the 1959 amendment. In that year Congress added the language to the effect that the assignment to the employer is effective after acceptance of compensation "unless such person shall commence an action against such third person within six months after such award." The legislative history underlying that amendment notes that the purpose of the change was "to eliminate the [then] present requirement of an immediate election either to take benefits under the

---

2. Under the facts of *Liberty Mutual Insurance Company v. Ameta & Company,* 564 F.2d 1097 (4th Cir. 1977), as disclosed in the file of the district court, the six-month period would have expired and thus operated an assignment prior to the insurance company bringing suit under any reading of the statutory scheme. In that suit compensation payments under the LHWCA began on October 16, 1974, and terminated on December 11, 1974. The injured longshoreman apparently never filed suit at any point. *Id.* at 1099–1100 & n.5. Suit was commenced by the insurance company on August 18, 1975, more than six months beyond even the later date of termination of payments. Thus, once the court determined that an informal award was sufficient to begin the running of the six-month period it was not necessary for the court to determine exactly the point in time that the award was made.

3. The Court rejects the conclusion that the "award" was made at some point between the commencement and acceptance of compensation and the termination of such payments for the reasons set out below with regard to the other two alternatives.

act or to pursue a remedy against the third party." [1959] U.S.Code Cong. & Admin. News, pp. 2134, 2136. Thus, the LHWCA establishes a system whereby in most cases an injured party is to receive immediate medical and compensation benefits without assigning his rights to pursue any third party liable for his injuries. However, at the same time the interests of the employer are protected by giving the employee a sufficient but limited period in which to determine whether he desires personally to pursue a third party for recovery. Since the only right actually being assigned is the right to control the litigation against a third party, *Dodge v. Mitsui Shintaku Ginko K.K. Tokyo,* 528 F.2d 669 (9th Cir. 1975), *cert. denied,* 425 U.S. 944, 96 S.Ct. 1685, 48 L.Ed.2d 188 (1976), the system offers an accommodation of the interests of both the injured longshoreman and his employer.

Thus, the Court concludes that the payment of benefits under the LHWCA with the requisite filing of documents and reports with U. S. Department of Labor and the acceptance of those payments by the plaintiff started the six-month period of section 33(b) to run. That these filings, payments and acceptance of compensation should be deemed to constitute an informal award so as to begin the six-month period is buttressed further by the provisions of sections 14(h), (i). 33 U.S.C. §§ 914(h), (i). Under those sections, the deputy commissioner at any time in a case in which payments are being made without a formal award may take such action necessary, including requiring an employer to deposit monies with the United States, to secure payment of compensation to the injured person.

█ The absence of such action or any other intervention by the deputy commissioner after the commencement and acceptance of payments and receipt of requisite filings by the employer constitute sufficient acceptance and ratification of such compensation to amount to an informal award under section 33(b). As noted above, any contrary result would operate only to give an employer every incentive to controvert lia-

bility in all cases or to terminate compensation at an early stage in order to protect his statutory right to an assignment and to deny the injured person prompt monetary and medical assistance at a time when he needs it the most.

We believe this view to be in harmony with the language in *Liberty Mutual, supra:*

> Two decisions and reference to parallel language regarding "awards" in various sections of the Act demonstrate that an award under a compensation order does not require formal entry of an award *per se. Rather, the focus should properly be upon some act of ratification of compensation, whether formal or informal, and the subsequent acceptance of compensation by the claimant.* (emphasis added)

Therefore, the Court finds that the present suit was initiated beyond the six-month period and thus after an assignment was made by statute to the employer.

For these reasons, the defendant's motion for summary judgment is hereby GRANTED and judgment is entered for the defendant.