618 F.2d 1037
 Charles A. CALDWELL, Appellant,
v.
OGDEN SEA TRANSPORT, INC., Appellee.
Wilbert C. HAROLD, Appellant,
v.
COMPANHIA DE NAVEGACAO MARITIMA NETUMAR, Appellee.
Melvin BANDY, Appellant,
v.
BANK LINE, LTD., Appellee.
James BRAITHWAITE, Appellant,
v.
MOORE-McCORMACK LINES, INC., Appellee.
Wallace CURRY, Appellant,
v.
COMPANIA CRASATLANTICA ESPANOLA, S. A., Appellee.
William Edward SWEENEY, Appellant,
v.
GOTAAS-LARSEN ARGENTINA, S. A. and Gotaas-Larsen, Inc., both
foreign corporations or associations, as owners and/or
operators of the Argentine M/V GAUCHO LAGUNA, and The
Chesapeake and Ohio Railway Company, a Virginia corporation
or association, Appellees.
 Nos. 78-1257, 78-1258, 78-1333, 78-1455, 78-1505 and 78-1653.
 United States Court of Appeals,
Fourth Circuit.
 Argued March 6, 1979.
Decided March 27, 1980.
 
 C. Arthur Rutter, Jr., Norfolk, Va., John H. Klein, Keller, Va. (Breit, Rutter & Montagna, Norfolk, Va., on brief), Burt M. Morewitz, Norfolk, Va. (Marshall, Blalock, Garner & Millner, W. Glover Garner, Jr., Newport News, Va., Arthur C. Ermlich and Melvin J. Radin, Norfolk, Va., on brief), for appellants.
 John B. King, Jr., Norfolk, Va. (Vandeventer, Black, Meredity & Martin, Norfolk, Va., on brief), John R. Crumpler, Jr., Norfolk, Va. (Seawell, McCoy, Dalton, Hughes, Gore & Timms, Norfolk, Va., on brief), Richard Wright West, Newport News, Va., for appellees.
 Before WIDENER and PHILLIPS, Circuit Judges, and ROBERT R. MERHIGE, District Judge, sitting by designation.
 JAMES DICKSON PHILLIPS, Circuit Judge:
 
 
 1
 These six consolidated appeals present issues arising under the Longshoremen's and Harborworkers' Compensation Act, 33 U.S.C. §§ 901 et seq., (LHWCA) relating to the prosecution by longshoremen of personal injury claims against allegedly negligent third person shipowners after having received statutory compensation benefits from their employers or the insurers of the employers. In each of these cases a workman injured on his job brought a third person LHWCA action more than six months after receipt of the last of compensation benefits paid without contravention of liability by an employer or his insurer. Principally because LHWCA automatically assigns to the employer or insurer any third person claim not prosecuted by the longshoreman within six months after an "award" of statutory benefits, summary judgment was given in favor of each of the defendants. As to each of the six appeals, consolidated in this court because of substantial common questions, we vacate and remand for further proceedings.
 
 
 2
 Various questions common to all the appeals and some related only to individual appeals are presented. The first common question is whether under § 933 of LHWCA the six-months period during which the exclusive right of action lies with the longshoremen is triggered by the uncontested payment of compensation benefits. A second common question is whether, if the period is so triggered, a concurrent right of action shared by the longshoremen with the assignees nevertheless survives the six months period. A final common question is whether, if assigned, the right of action may nonetheless be revested in the longshoreman upon failure of the assignee to prosecute the claim because of a presumed or demonstrated conflict of interest. As to the claimant Caldwell, in No. 78-1257, a separate question is whether an actual reassignment of the claim, if made by the insurer-assignee, would be effective to revest the right of action in the longshoreman in any event. As to the claimant Sweeney in No. 78-1653, separate questions related to additional statutory claims other than under LHWCA are raised. As to the claimant Bandy in No. 78-1333, the question is raised whether reassignment may have occurred by waiver. These are discussed in the order given.
 
 
 3
 * The first common question requires interpretation of the critical third person claim procedures provided in §§ 933(a), (b) and (h) of LHWCA. In their current form these provide:
 
 
 4
 (a) If on account of a disability or death for which compensation is payable under this chapter the person entitled to such compensation determines that some person other than the employer or a person or persons in his employ is liable in damages, he need not elect whether to receive such compensation or to recover damages against such third person.
 
 
 5
 (b) Acceptance of such compensation under an award in a compensation order filed by the deputy commissioner or (the Benefits Review) Board shall operate as an assignment to the employer of all right of the person entitled to compensation to recover damages against such third person unless such person shall commence an action against such third person within six months after such award.
 
 
 6
 (h) Where the employer is insured and the insurance carrier has assumed the payment of the compensation, the insurance carrier shall be subrogated to all the rights of the employer under this section.
 
 
 7
 33 U.S.C. § 933(a), (b), (h).
 
 
 8
 Relying upon our decision in Liberty Mutual Insurance Co. v. Ameta & Co., 564 F.2d 1097 (4th Cir. 1977), the district court ruled that because each of the longshoremen plaintiffs had received his compensation "under an award in a compensation order filed by the deputy commissioner" more than six months prior to commencing his third person action, the rights of action on the claim had been assigned by operation of § 933(b) and (h) to the employer or insurer. Though holding further that the longshoremen might be found nonetheless entitled to maintain the actions by showing a disabling conflict of interest in the assignees, see Part III infra, the court found that this had not been shown on the summary judgment records and gave judgments accordingly for the shipowner defendants.[1]
 
 
 9
 In Ameta we held that when, as here, compensation benefits were paid without any contravention of liability, the formal filing of the accident report and an attending physician's report, followed by notice of payment of compensation and notice that compensation payments had been stopped or suspended was sufficient affirmative action by the Deputy Commissioner to constitute an "award" under § 933(b). Appellants contend that uncontested payment of benefits should not be deemed to constitute an "award" of benefits, and seeking to avoid Ameta 's effect, suggest that we overrule it. That lies beyond our province as a panel of this court, even were we disposed to do so. See North Carolina Utilities Commission v. F. C. C., 552 F.2d 1036, 1044-45 & n.8 (4th Cir. 1977). By rejecting the suggestion in this way, we of course intimate no disposition to re-examine Ameta 's holding had we the power.
 
 
 10
 Next, appellants attempt to distinguish Ameta. In that case, the longshoreman after receiving compensation from the insurer, accepted $1000 from the third person shipowner and executed a release. The insurer then sued both the longshoreman and the third person shipowner to recover the amount of its compensation payments. We held that since the longshoreman had received his compensation under an award within the meaning of § 933(b) and more than six months had passed, his third person claim against the shipowner had been assigned by subrogation to the insurer who could therefore maintain the action. Though the facts are different here, we do not think they permit distinguishing Ameta on its critical holding. Here the same documents have been filed and more than six months have passed since the last compensation payment.[2] The only difference is that here the longshoreman is claiming the right of action rather than the subrogated insurer. But Ameta 's holding that the claim passed to the insurer upon the effective date of the award necessarily also means that it may not thereafter be asserted by the longshoreman, unless it is then held concurrently or is somehow actually or constructively thereafter reassigned. Those alternative possibilities are discussed in following Parts of this opinion, but the Ameta holding itself applies here to compel the conclusion that in each of the cases before us, the third person claim was assigned upon the passage of six months following last receipt of benefits to the paying employer or insurer.
 
 II
 
 11
 The longshoremen next contend that the right of action on the third person claim should be deemed concurrently held by longshoremen and subrogated insurers after passage of the six months limitation period. Were we writing on a clean slate, strong policy considerations might be found to support such a position. LHWCA should be interpreted broadly in favor of the injured longshoreman. E. g., Voris v. Eikel, 346 U.S. 328, 333, 74 S.Ct. 88, 91, 98 L.Ed. 5 (1953). One of its objectives is to place "the burden ultimately on the company whose default caused the injury," Italia Societa per Azioni di Navigazione v. Oregon Stevedoring Co., 376 U.S. 315, 324, 84 S.Ct. 748, 754, 11 L.Ed.2d 732 (1964), and a negligent shipowner would seem to have no complaint if that burden is placed upon it by the longshoreman rather than the employer or its insurer. Courts have construed roughly comparable language in state workmen's compensation statutes to create a concurrent right to proceed against a third party tortfeasor. E. g., Parkhill Truck Co. v. Wilson, 190 Okl. 473, 125 P.2d 203 (1942). See generally 2A A. Larson, The Law of Workmen's Compensation § 75.40 (1974). Indeed, cases under LHWCA itself arguably may have taken such a position. See Clark v. Hutchison, 161 F.Supp. 35 (D.C.Z.1957); cf. Potomac Electric Power Co. v. Wynn, 120 U.S.App.D.C. 13, 343 F.2d 295 (D.C.Cir.1965) (per curiam) (longshoreman may sue when "for any reason" stevedore or its insurer does not).
 
 
 12
 Be that as it may, we conclude that the history of the legislation we apply precludes that interpretation. We do not write on a clean slate. While the longshoreman's right of action against negligent third persons has always been protected by LHWCA, he was required under the original version to elect between compensation or a right of action against the third party.[3] When the longshoreman elected compensation, he gave up any interest in the third party action or control over it. Hunt v. Bank Line, Ltd., 35 F.2d 136, 137 (4th Cir. 1929). Absent such a formal election he could in theory also have pursued his third party claim, but the original version of § 933(b) made this impossible.[4] The courts held that the mere acceptance of compensation, even without a formal election, effected an assignment of the right of action to the employer. E. g., Toomey v. Waterman S. S. Corp., 123 F.2d 718, 721 (2d Cir. 1941). But see Johnsen v. American-Hawaiian S. S. Co., 98 F.2d 847 (9th Cir. 1938).
 
 
 13
 In 1938, Congress acted to mitigate this deficiency. Section 933(b) was amended to provide that an assignment would occur only if the compensation was accepted "under an award in a compensation order filed by the deputy commissioner."[5] The amendment was successful in that the longshoreman who did not file a formal election and merely received voluntary payments without an award was thereafter allowed to pursue his third party claim. American Stevedores, Inc. v. Porello, 330 U.S. 446, 456, 67 S.Ct. 847, 852, 91 L.Ed. 1011 (1947).
 
 
 14
 The statute was not yet completely functional, however, for as a practical matter the longshoreman was still compelled to look essentially to the compensation payments. Third person liability was uncertain and always delayed. The longshoreman was entitled to the difference between any recovery obtained by the assignee and the amount paid under the Act plus the litigation expenses, Act of June 25, 1938, ch. 685, § 12, sec. 33(e), 52 Stat. 1164, 1168, amending Longshoremen's and Harbor Workers' Compensation Act, ch. 509, § 33(e), 44 Stat. 1424, 1440-41 (1927), but the assignee, as it still can, could settle the claim for its outlay without the consent of the longshoreman, 33 U.S.C. § 933(d), and there was no incentive for it not to do so. See S.Rep.No.428, 86th Cong., 1st Sess., reprinted in (1959) U.S.Code Cong. & Admin.News, p. 2134.
 
 
 15
 In 1959, therefore, Congress again amended § 933 to its present form to eliminate the election requirement under subsection (a), to postpone the assignment under subsection (b) until six months after acceptance of compensation under an award, and to give twenty percent of any excess recovery by the assignee to the assignee as incentive to bring the third party action. Act of August 18, 1959, Pub.L.No.86-171, 73 Stat. 391.
 
 
 16
 If, as appellants contend, the right of action against third person tortfeasors becomes concurrent when the assignment occurs, much of this legislation was unnecessary. The 1938 amendment adding the award requirement to § 933(b) need never have been enacted; the judicial decisions barring suit by the longshoreman before that amendment were incorrect; and the 1959 amendment postponing the assignment six months was essentially superfluous. On balance we conclude that whatever might be the merits of a concurrent right of action approach, LHWCA will not yield that interpretation.
 
 III
 
 17
 The longshoremen next contend, in a fall back position from the two just discussed and rejected, that where a conflict of interest on the part of an assignee of the third person claim can be shown, the right of action should be deemed reassigned to the longshoreman. The district court held, relying on Czaplicki v. The Hoegh Silvercloud, 351 U.S. 525, 76 S.Ct. 946, 100 L.Ed. 1387 (1956), that proof of such a conflict of interest should have this effect, but that the burden of proof to establish the conflict should be borne by the longshoreman. When none of the longshoremen, despite opportunity given to carry this burden, was found to have done so, judgments for the third person defendants of course followed.
 
 
 18
 On this appeal the longshoremen urge that a presumption of conflict should arise from the mere failure of an assignee to bring a third person action, thereby imposing upon the third person when sued the burden of negating the existence of a conflict. To the contrary, defendants here contend that the conflict of interest principle announced in Czaplicki should be considered abrogated by subsequent legislation in 1959 and 1972 which, by removing existing disincentives for assignees to prosecute third person claims, effectively removed the originally felt need for the amelioration that Czaplicki provided.
 
 
 19
 We agree with the longshoremen and the district court that the Czaplicki doctrine has not been undercut by subsequent legislation.[6] But we consider its conflict of interest principle as applied by the district court to be so demonstrably ineffectual to carry out the purposes of LHWCA in respect of third person claims that it must be reassessed. When this is done, we think that a solution building upon the underlying Czaplicki principle but more fairly serving the various individual interests as well as the purposes of LHWCA is readily found within broader, traditional principles of subrogation and real party in interest doctrine.
 
 
 20
 The ineffectiveness of specific conflict of interest principles as applied in these cases and the more appropriate solution available within established doctrine may be illustrated by analyzing the practical problems faced by both longshoreman, assignee, and third person after statutory compensation has been paid under the Act. At this point both longshoreman and assignee of course have an interest in realizing on any claim that may exist against a negligent third person: the assignee to recoup, the longshoreman to recover amounts in excess of, compensation paid. The third person presumably has no substantial interest in the identity of the ultimate claimant, but does have an interest in facing only one action. Were the statutory assignment scheme not in play, both parties might be considered "real parties in interest" under traditional subrogation principles, and the rights inter se of these two and any third person target of suit would be adequately served by well-developed principles that protect the third person against multiplicity of actions while safeguarding the separate substantive claims of the claimants. See generally 6 Wright & Miller, Federal Practice and Procedure: Civil §§ 1545, 1546. But the assignment-subrogation scheme of § 933 of course operates precisely to alter that normal three-way relationship resulting from subrogation in respect of third person claims. Under § 933 the longshoreman is made the sole real party in interest for six months; the assignee the sole real party in interest thereafter. This statutory scheme assumes that in the normal course a longshoreman with a meritorious third person claim will know of it and will make a considered decision either to prosecute it for the joint interests as the statutory real party in interest during the six months period or to defer to the assignee as successor real party in interest. It then further assumes that in the normal course an assignee will within the statutory limitation period prosecute for the benefit of both any claim not prosecuted by the longshoreman. To encourage realization of this latter expectation, LHWCA now provides a financial incentive to the assignee to prosecute the action, and has removed the former disincentives to suit resulting from judicial glosses on the Act.[7] Ordinarily, therefore, it is likely that the interests of both longshoreman and assignee in having their substantive rights pursued and of the third person in facing a single action will be achieved under LHWCA.
 
 
 21
 But LHWCA does not yet deal directly with certain practical problems that may interrupt or wrench these expectations. These can arise whenever by design or inadvertence the longshoreman fails during the statutory period to prosecute the claim while the right of action is exclusively his. Following this failure, the assignee may, for a variety of reasons, not then itself prosecute the claim. It may not consider a claim thought meritorious by the longshoreman to be sufficiently so to warrant the expense of litigation. It may have a specific conflict of interest that militates against prosecuting the claim. It may simply be dilatory to the point that the claim is threatened by a limitations bar. Under all of these, and to precisely the same degree under all, the longshoreman faces a practical problem for which LHWCA provides no direct solution: forcing action by the assignee, or somehow retrieving the right of action. While LHWCA does not specifically provide the solution, it certainly cannot be thought to have been intended by Congress that the longshoreman's substantive right might be lost simply through inaction of the assignee until the claim is barred from prosecution by anyone. What is needed is a solution that adequately protects the assignee's first right of exclusive action but that also protects the longshoreman's substantive right against loss through inaction of the assignee for whatever reason.
 
 
 22
 The concurrent right of action approach taken by some courts is an attempted solution along these lines. As indicated in Part II, we do not think the legislative history of LHWCA permits finding such a solution within the Act. Furthermore, a truly concurrent right possessed by the longshoreman would be in derogation of the normally justifiable right of the assignee, who usually has the greater substantive interest at stake, to maintain exclusive control over the action.
 
 
 23
 The conflict of interest principle found in Czaplicki is another possible basis of solution. It has proven however to pose two problems that have made it difficult of general application. The first is substantive: its implication that the conflict of interest must be one specifically related to the assignee's relationship with the third person. The second is procedural: the problem of allocating proof on the issue of the assignee's conflict of interest as between the longshoreman and the third person, the actual litigants in the third person action. On its facts, Czaplicki, origin of the principle, simply did not encounter either of these as significant problems. Substantively the conflict of interest in Czaplicki was the clearest conceivable: the assignee insurer was also insurer of the third person shipowner. Procedurally, because the existence of conflict was manifest as a matter of law, no problem of factual proof was presented.
 
 
 24
 Courts attempting to apply the Czaplicki principle in situations less clear in either substantive or procedural terms have foundered in the effort to find in it a general solution to the problem. To the extent it was thought to require a specific conflict of interest in the sense of an affirmative interest by the assignee in protecting the third person, it could not of course reach mere disinclination of the assignee to sue because of expense or doubt as to the merits, or failure to sue because of negligence or inadvertence.[8] ] To the extent a conflict was not manifest in the circumstances but required factual proof, the problem of allocating to either longshoreman or third person the burden of proving another's state of mind has presented obvious and possibly insurmountable difficulties.[9]
 
 
 25
 As indicated, we think that a solution building on the fundamental point in Czaplicki, but avoiding both of these problems is readily at hand. The fundamental point in Czaplicki is that notwithstanding a statutory assignment of the longshoreman's right of action, that right of action may be revested in the longshoreman when it becomes manifest that the assignee, with knowledge of its exclusive right to control and prosecute the claim, nevertheless declines to do so for any reason. This surely accords with the equitable considerations that the longshoreman should not lose his substantive right simply by reason of disinclination of the statutory assignee to sue, and that a deliberate decision by the latter to forego the exclusive right to control prosecution of the claim must reflect a knowledgeable relinquishment of right.
 
 
 26
 Taking this as the root Czaplicki principle, only two things need be done to invoke its application in a particular case. The longshoreman must formally signal to the assignee a desire to have the claim prosecuted by the latter at peril of having the exclusive right of action revested in the former, and the assignee must in return formally signal its disinclination to prosecute the action.
 
 
 27
 The practical and procedural means for realizing these are also readily found. A longshoreman desiring to force decision can of course first proceed extra-judicially to request action by the assignee or, as an alternative, formal reassignment of the right of action. As we indicate in Part IV of this Opinion, a formal reassignment will be effective to revest the exclusive right of action in the longshoreman. If this fails, the longshoreman may commence an action on the third person claim in his own name, as was done in the actions before us. In this action he may join the assignee as an involuntary plaintiff, Fed.R.Civ.P. 19(a), alleging the essential facts of the three parties' relationship, and praying that the assignee assume exclusive control of the action's prosecution.[10] A specific refusal in a responsive pleading to assume control, or a failure specifically to respond to this prayer for relief may fairly be treated as a reassignment in accordance with the equitable considerations underlying the Czaplicki principle. If the assignee on the other hand asserts by responsive pleading an intention to assume control of the prosecution, this should be taken to constitute acceptance of an obligation to prosecute it in diligence and good faith.
 
 
 28
 Because we conclude that invocation of the Czaplicki principle should not depend upon proof of the existence of a specific conflict of interest, the judgment entered on that basis in favor of the defendants in each of the instant actions must be vacated and the actions remanded for further proceedings. Upon remand, all plaintiffs covered by LHWCA may, if so disposed, amend their complaints to add as involuntary plaintiffs the subrogated assignees in their respective actions, and thereafter may proceed in accordance with the procedures outlined in this opinion.[11]
 
 IV
 
 29
 In No. 78-1257, appellant Caldwell raises the issue whether an actual reassignment of the exclusive right of action by the statutory assignee would be effective to revest that right in him.[12] The district court held that reassignment could not validly be made because it would in effect make an "end-run" around the six-months provision of the statute and thus violate essential statutory purposes.
 
 
 30
 On appeal defendants urge this as a sufficient ground for affirmance on this issue, and also contend that reassignment would violate the general rule forbidding the assignment of personal injury claims. We reject both of these and hold that an actual reassignment, duly given, does revest in the LHWCA claimant the exclusive right to maintain action on the third party claim in protection of his own and the subrogee's beneficial interests.
 
 
 31
 While the effect of reassignment is undoubtedly to revive an exclusive right of action which by statute expires upon expiration of the six months period, we seen no violence done to the underlying statutory scheme by such a development. As earlier noted, the purpose behind the statutory assignment under 933(b) and (h) is to protect the assignee's right to recoup compensation benefits paid and to enhance the possibility that third person tortfeasors will be held to liability by giving the right of action over to that one of the two beneficially interested parties normally best able in terms of resources and experience to prosecute it. See Potomac Electric Power Co. v. Wynn, 120 U.S.App.D.C. 13, 16, 343 F.2d 295, 298 (D.C.Cir.1965) (per curiam). If the statutory assignee does not care to exercise the exclusive right and chooses instead to reassign it to the other beneficially interested party for prosecution, no statutory purpose is offended, and indeed the underlying purpose of holding a third person tortfeasor to liability will presumably be furthered. So far as the third person's interests are concerned, reassignment clearly gives no offense to the statutory scheme. The possibilities for establishing liability are not enhanced; the bar of the limitations period to suit on the underlying claim is not affected; and the interest in facing only one action in respect of the two beneficial interests in the claim is unaffected. The third person's interest in being able to settle with the statutory assignee without consent of the injured person would seem adequately protectible by ordinary good faith efforts to settle.
 
 
 32
 Neither do we find any merit in the defendant's reliance upon the general rule of the non-assignability of personal injury claims.[13] In the first place, the reassignment in question (like the initial statutory assignment) affects only the right to bring and control action on the claim; it does not affect the beneficial interests in that claim, except to the limited extent that the statutory assignee surrenders the "bounty" portion of the claim provided in § 933(e)(2). All that is involved is a recasting of real party in interest status for the purpose of prosecuting a claim in which there remain joint beneficial interests. More importantly, the main purposes of the general rule of non-assignability of claims for personal injury are not offended by this type reassignment. Those purposes, to prevent unscrupulous strangers to an occurrence from preying on the deprived circumstances of an injured person, and to prohibit champerty, simply have no applicability where the assignment is to the injured person himself. Finally, the statutory scheme itself involves an initial assignment of the exclusive right to maintain the action, bespeaking a Congressional rejection of any general common law rule against assignability of third person claims under LHWCA.
 
 
 33
 Upon remand any claimant who is disposed to attempt proof of an actual reassignment already made must be allowed to do so. Obviously, in view of the conditions of remand of all the actions, any claimant may now attempt to procure such an actual reassignment before proceeding further with his third person action.
 
 V
 
 34
 In No. 78-1653, several special issues related to the claimant Sweeney's action are presented.
 
 
 35
 Sweeney was employed as a pier laborer by the Chesapeake and Ohio Railway Company at the time he received an injury to his back in attempting to cast off a line mooring the M/V Gaucho Laguna to the dock at which he worked. After receiving voluntary LHWCA compensation payments from his employer Sweeney brought action against his employer under the Federal Employers Liability Act, 45 U.S.C. §§ 51-60, (FELA) and against the owner of the Gaucho Laguna as a seaman under the Jones Act, 46 U.S.C. § 688, or, alternatively, as a third person defendant under LHWCA. The district court rejected his FELA claim because of his receipt of LHWCA benefits; rejected his claim under the Jones Act on the basis that he was neither a seaman nor a borrowed servant of the shipowner; and rejected his third person claim under the LHWCA for the reasons already discussed in reference to all the appeals.
 
 
 36
 In holding that Sweeney had no claim under the FELA, the district court apparently assumed that having received benefits under the LHWCA, this fixed his status as an "employee" under that Act and that this in turn determined the remedy received under LHWCA as his exclusive one. As we have recently held, that is not always necessarily so. Freeman v. Norfolk & Western Ry., 596 F.2d 1205 (4th Cir. 1979). If Sweeney is within the coverage of LHWCA, that Act does provide his exclusive remedy against his employer, the Chesapeake and Ohio Railway. Nogueira v. New York, N.H. & H.R.R., 281 U.S. 128, 50 S.Ct. 303, 74 L.Ed. 754 (1930). On the other hand, if he is not within the coverage of LHWCA, his right to sue the employer under FELA is precluded only if the circumstances under which he accepted LHWCA benefits constituted an election in fact of that remedy or if he is now estopped by conduct from asserting LHWCA's nonapplicability to him. Freeman v. Norfolk & Western Ry., 596 F.2d at 1208.
 
 
 37
 In Freeman, it had been judicially determined that the claimant's exclusive statutory remedy was under FELA, and the only question was whether his prior acceptance of LHWCA benefits precluded his now recovering under FELA (with credit of course for the prior recovery). Freeman held not. Here, the determination of exclusive coverage under one or the other of these Acts has not been properly made, because the district court apparently assumed that whatever the technical coverage, Sweeney's acceptance of LHWCA benefits precluded, by election or estoppel, further recovery under FELA. Freeman reveals the error of this holding and the necessity that the preliminary question of statutory coverage be decided. For only if Sweeney's employment is technically covered by LHWCA is he absolutely precluded from pursuing his FELA claim. If FELA provides his exclusive remedy, Freeman permits his pursuit of it notwithstanding the receipt of LHWCA benefits, subject only to any election or estoppel defenses that might be available to the employer.
 
 
 38
 Upon remand, that question must be addressed in order to dispose of Sweeney's various claims. On the record before the district court, the question involved issues of material fact that made summary judgment denying FELA relief inappropriate. Without attempting to anticipate the exact course of further proceedings in this respect, it may be appropriate to observe that Sweeney's coverage under LHWCA turns on the twin tests of the situs of his injury as defined in § 903(a) of LHWCA[14] and his employment status at the time as defined in § 902(3).[15] See Pfeiffer Co. v. Ford, 444 U.S. 69, 100 S.Ct. 328, 62 L.Ed.2d 225 (1979); Northeast Marine Terminal Co. v. Caputo, 432 U.S. 249, 264-65, 97 S.Ct. 2348, 2357-58, 53 L.Ed.2d 320 (1977).
 
 
 39
 While the situs element of the LHWCA coverage test may be fairly clear since Sweeney's injury indisputably occurred on a pier adjoining navigable waters of the United States, 33 U.S.C. § 903(a), the status element is not so clear on the present record and its resolution must be undertaken upon remand.
 
 
 40
 The status question is whether, within the meaning of § 902(3), Sweeney was engaged in "maritime employment" when injured. The statute itself does not further define this except by illustration, and guidance to its legal meaning must be found in judicial interpretation. Initially, Sweeney's contention that his membership in a railway union conclusively establishes that he was not in maritime employment must be rejected. "The vagaries of union jurisdiction are unrelated to the purposes of (LHWCA)." Northeast Marine Terminal Co. v. Caputo, 432 U.S. at 268 n.30, 97 S.Ct. at 2359 n.30. Marine Terminal emphasized that "maritime employment" must be construed in light of the purpose of the 1972 amendments to LHWCA. These extended its coverage landward in recognition that with the advent of container shipping much work formerly done aboard ship is now performed dockside, and this makes the question whether a claimant was engaged in maritime employment, hence covered by LHWCA, one not dependent simply upon whether his employment positioned him on land or over water. 432 U.S. 269-72, 97 S.Ct. at 2360-61. In recognition that the factual issue in a particular case is more complicated than that, we have focused in our decisions on whether a claimant asserting harbor-worker status was "directly involved" in the work of shipbuilding, though he may not have worked aboard ship, Newport News Shipbuilding & Dry Dock Co. v. Graham, 573 F.2d 167, 170 (4th Cir. 1978), and on whether a claimant asserting longshoreman status was an "integral part of the unloading process," Conti v. Norfolk & Western Ry., 566 F.2d 890, 895 (4th Cir. 1977). See Pfeiffer Co. v. Ford, 444 U.S. at 76, 100 S.Ct. at 334 (1979). This reflects recognition that Congress did "not intend to cover employees who are not engaged in loading, unloading, repairing, or building a vessel, just because they are injured in an area adjoining navigable waters used for such activity." H.R.Rep.No.92-1441, 92nd Cong., 2d Sess. 11, reprinted in (1972) U.S.Code Cong. & Admin.News, pp. 4698, 4708.
 
 
 41
 Within these general principles, the factual issue of Sweeney's employment status at the time of his injury must be resolved in order to dispose of the question whether LHWCA provided exclusive coverage for his claim. Whether that question can be resolved by summary judgment on the present or a reopened record, or whether it must be resolved on trial, we need not try to anticipate. Neither need we anticipate whether, if LHWCA is found not to provide Sweeney's exclusive statutory coverage, he may nevertheless be found to have elected that remedy or to be estopped to deny its exclusiveness by conduct accompanying the acceptance of LHWCA benefits. If such factual issues are raised, the controlling legal principles for their resolution are those applied in Freeman v. Norfolk & Western Ry., 596 F.2d 1205 (4th Cir. 1979).
 
 
 42
 We agree with the district court in rejecting Sweeney's Jones Act claim on the basis that as a matter of law he was not a seaman or a borrowed servant of the shipowners. While the existence of seaman status may also present issues of fact not properly resolved by summary judgment, e. g., Senko v. LaCross Dredging Corp., 352 U.S. 370, 77 S.Ct. 415, 1 L.Ed.2d 404 (1957), we believe that here the question was properly resolved as a matter of law against Sweeney's contention. Though the exact nature of his duties may not have been fully developed on the record, thereby leaving the question of LHWCA status open for resolution, the record does reveal that his entire involvement with the ship whose owner he sued was to cast off her lines. This he did solely at the direction of his employer, the railroad, and his only connection with the ship was to communicate by gesture with her crew to the extent necessary to perform that limited task. Casting off the lines for this and other ships was part of his usual duties for his employer, the railroad. We conclude that within the meaning of the Jones Act, Sweeney cannot be considered a seaman or borrowed servant.
 
 VI
 
 43
 In No. 78-1333, appellant Bandy asserts that by notifying him and the third person of its compensation lien on any recovery in his third person action, see 33 U.S.C. § 933(b), the insurer had effectively waived its exclusive right of action so that the real party in interest defense was not available to the third person defendant. We reject this contention. Protective conduct of this kind by a subrogated insurer in light of the uncertainties of the assignment situation under LHWCA cannot fairly be given any such effect. In any event, Bandy, with the other claimants, is free upon remand to proceed with his third person action under the procedures authorized in this opinion, so that this waiver contention is effectively mooted.
 
 VII
 
 44
 The judgments for the several defendants in Nos. 78-1257 (Caldwell); 78-1258 (Harold); 78-1333 (Bandy); 78-1455 (Braithwaite); and 78-1505 (Curry) respectively, are vacated and remanded for further proceedings in accordance with this opinion. In No. 78-1653 (Sweeney), the judgment for the defendants Gotaas-Larsen, Argentina and Gotaas-Larsen, Inc. denying appellant Sweeney's Jones Act claim is affirmed; the judgments for the defendant Gotaas-Larsen Argentina and Gotaas-Larsen, Inc. on appellant Sweeney's third person claim under LHWCA and for defendant The Chesapeake & Ohio Railway Co. on appellant Sweeney's FELA claim are vacated and remanded for further proceedings in accordance with this opinion.
 
 
 45
 AFFIRMED IN PART; VACATED AND REMANDED IN PART.
 
 
 46
 WIDENER, Circuit Judge, concurring and dissenting:
 
 I.
 
 47
 I concur in parts I, II and VI of the opinion.
 
 II.
 
 48
 I concur in the result reached in part III of the opinion, but for somewhat different reasons.
 
 
 49
 Based on the decision in Czaplicki, the district court below afforded plaintiffs the opportunity to prove an actual conflict of interest between the assignee and the third-party wrongdoer, and plaintiffs failed in that proof. If that were all Czaplicki stood for, I feel that judgment should simply be entered in favor of defendants.
 
 
 50
 It is true that Czaplicki speaks in terms of giving the assignee exclusive control over the action against the tortfeasor, 351 U.S. at 531, 76 S.Ct. at 950, and I think that that control was made no less exclusive by the 1959 amendment to § 933. The fact that the assignee is given exclusive control over the action would at first glance seem to indicate that the district court should be affirmed. But, the Supreme Court in Czaplicki also gave as a reason for its decision the fact that there was "no other procedure by which (the longshoreman could) secure his statutory share in the proceeds, if any, of his right of action." 351 U.S. at 532-33, 76 S.Ct. at 951. I also think that the longshoreman's statutory share in the proceeds was not made any less by the 1959 amendment, and I therefore believe the procedure described in the panel opinion is an acceptable "other procedure", Czaplicki, 351 U.S. at 532, 76 S.Ct. at 950, by which the longshoreman can secure his statutory share.
 
 
 51
 Our decision allows the longshoreman to commence an action in his own name against the tortfeasor, and provides for the joinder of the assignee as an involuntary plaintiff. If the assignee refuses to assume control of the action or simply fails to respond, the longshoreman is given control of the action. On the other hand, the assignee may by responsive pleading assert an intention to prosecute the action and thereby retain control of the suit.
 
 
 52
 I am convinced that the Supreme Court, when the issue is fairly presented, will allow a longshoreman to proceed under some theory. And, I feel the procedure we adopt is preferable to the one suggested by Mr. Justice Frankfurter's concurring opinion in Czaplicki, which would in effect make the assignee a trustee of the longshoreman's claim. Holding the assignee to such a fiduciary duty might well subject him to a higher standard of care than if the action were his alone from the start, and the majority in Czaplicki did not choose to "go so far." 351 U.S. at 532, 76 S.Ct. 950.
 
 
 53
 An arguable difficulty with either approach is the apparent conflict between the assignee's right to settle the claim without the consent of the longshoreman and the longshoreman's new right to manage the suit. But, it seems to me no more inconsistent to take away the assignee's right to settle than it does to take away his right to control the action, and he can retain both by going ahead with the suit when the longshoreman gives his notice. The fiduciary duty suggested by Mr. Justice Frankfurter, I feel, might well be even more inconsistent with the assignee's right to settle, and the problems with that approach might well be worse, for there would then be, for example, the question of the adequacy of any settlement made by the assignee.
 
 
 54
 The procedure we have adopted is another way for the longshoreman to secure his statutory share in the proceeds, and it places on him the burden to so act. If he is not satisfied with what the assignee is doing, he must proceed. If, for example, the statute of limitations ran without the longshoreman acting, he would have to be content with any inaction by the assignee, for he would have failed in his burden of going forward although the opportunity so to do was presented.
 
 III.
 
 55
 I concur in the result of part IV of the opinion, but feel that the basis for the decision should stand solely upon federal law, rather than State law.
 
 
 56
 The majority opinion states that the "(d)efendants rely upon both state and federal law for the rule against non-assignability." The majority would hold the general rule prohibiting the assignment of personal torts inapplicable under State and federal law, and therefore does not decide which law controls on this issue. If I thought that Virginia law controlled the assignability of these causes of action for personal injuries, I would be bound to dissent from the majority opinion. Virginia Code § 8.01-26 states that "(o)nly those causes of action for damage to real or personal property . . . and causes of action ex contractu are assignable." The Virginia courts have refused to allow the assignment of a cause of action for injury to the person, see, e. g., City of Richmond v. Hanes, 203 Va. 102, 122 S.E.2d 895 (1961), and I see no way we could circumvent the clear language of the Virginia statute and holdings of the Virginia decisions.
 
 
 57
 Caldwell's action being brought under the maritime law of the United States, however, requires that federal law be applied in this case. Pope & Talbot, Inc. v. Hawn, 346 U.S. 406, 409-11, 74 S.Ct. 202, 204-06, 98 L.Ed. 143 (1953). The Supreme Court in Pope & Talbot stated that the "action is a maritime tort, a type of action which the Constitution has placed under national power to control in 'its substantive as well as its procedural features * * *.' " Id. at 409, 74 S.Ct. at 205 (footnote omitted). Nor does the fact that jurisdiction is based upon diversity of citizenship alter this result. Id. at 410-11, 74 S.Ct. at 205-06. Therefore, we must look to federal law to determine whether an actual reassignment of the right of action by the insurer would be effective to allow Caldwell to bring the suit.
 
 
 58
 Surprisingly, there seems to be little on the subject of the assignability of personal torts under federal law. The general rule is "that mere personal torts, which die with the party, and which do not survive to his personal representative, are not capable of passing by assignment." Comegys v. Vasse, 26 U.S. (1 Pet.) 193, 213, 7 L.Ed. 108 (1828). See also Traer v. Clews, 115 U.S. 528, 540, 6 S.Ct. 155, 159, 29 L.Ed. 467 (1885). Originally this rule of nonassignability applied to almost every type of action, but the Statute of 4 Edward III modified the common law rule and limited its application to torts in the nature of personal wrongs. Momand v. Twentieth-Century Fox Film Corp., 37 F.Supp. 649, 652 (W.D.Okl.1941). My research has uncovered no case modifying this general rule under federal law.
 
 
 59
 The nonassignability of personal torts is also the general rule in State jurisdictions, except where altered by statute. Allowing such assignments is generally held to be contrary to public policy. 6A C.J.S. Assignments § 38, at 643-44 (1975).
 
 
 60
 Any policy reasons against the assignment of personal torts are inapplicable in this instance, however. Congress has provided in § 933(b) for the initial assignment of the employee's right of action against a third person upon the acceptance of compensation by the employee and the passage of six months. Any rule against the assignability of such actions in the abstract falls away where Congress has so provided for the initial assignment. And, as noted by the majority, there is even less reason for the rule where the assignment is back to the injured person who initially possessed the right of action. Therefore, I feel that the reassignment should be allowed in this case.
 
 
 61
 Thus, while I concur in the result of part IV of the opinion allowing reassignment of the right of action, the basis for my opinion rests solely on federal law.
 
 IV.
 
 62
 I respectfully dissent from the remand ordered in part V of the opinion and would require judgment against Sweeney now in his suit against the railroad.
 
 
 63
 I should say that I am uncomfortable with our decision in Freeman. Absent an en banc court, however, that opinion must control. My discomfort is annunciated in this case where Sweeney accepted $10,775.80 in compensation from November 1974 until July 1976, when he was retired by the C&O for disability. After retirement, he then filed his complaint in 1977 against the C&O under the FELA. Sweeney is not even required to put up the amount he has received as compensation as a condition to being permitted to proceed with this suit against his former employer, so he has the best of both worlds. He has received the compensation money under one statute, the LHWCA, and now he can proceed to recover under another, the FELA, although he candidly admits that he cannot be covered under both statutes because of the exclusivity provision of the LHWCA.
 
 
 64
 Acknowledging, however, that my restiveness with Freeman cannot be remedied in a panel opinion, I would yet hold that Sweeney is a harbor worker as a matter of law. Sweeney's testimony on this subject is as follows, and nothing in the record contradicts it:
 
 
 65
 Q. Now, on the date of the accident, November 7, 1974, what were your duties regarding the vessel GAUCHO LAGUNA?
 
 
 66
 A. I was a laborer, but when the ship goes in and out, I was a lineman. That was to untie the vessels, and tie them up when they come to dock.
 
 
 67
 Q. And how long have you worked for the C&O doing this work, approximately?
 
 
 68
 A. I went there in 1947.
 
 
 69
 Q. And that has been your usual experience?
 
 
 70
 A. That was my work.
 
 
 71
 If being a lineman on a pier when ships go in and out is not "of a traditional maritime nature," Conti v. N&W RR Co., 566 F.2d 890 (4th Cir. 1977), I am unable to describe traditional maritime work.
 
 
 72
 Since I believe that Sweeney was engaged in work of a traditional maritime nature, I think he meets the status test of the statute, it being acknowledged that he meets the situs test, thus the exclusivity provision of the statute should apply. 33 U.S.C. § 905(a).
 
 
 
 [1]
 The only reported opinion of the group, and the one upon which the others relied, is Bandy v. Bank Line, Ltd., 442 F.Supp. 882 (E.D.Va.1977). The reported opinion left open the possibility of conflict of interest proof. Final judgments against the various claimants for failures of proof were later entered in each case
 
 
 [2]
 In Ameta we were not required to decide whether the six month period provided in § 933(b) runs from the beginning of the payment of compensation or from its termination when liability is not controverted. One district court of this Circuit has held that it runs from the beginning. Larson v. Associated Container Transportation (Australia) Ltd., 459 F.Supp. 561 (E.D.Va.1978). Since each of the suits at bar was commenced more than six months after the termination of payments, the question is not presented in this case
 
 
 [3]
 As originally enacted, and until 1959, § 933(a) read:
 If on account of a disability or death for which compensation is payable under this Act the person entitled to such compensation determines that some person other than the employer is liable in damages, he may elect, by giving notice to the deputy commissioner in such manner as the (Secretary of Labor) may provide, to receive such compensation or to recover damages against such third person.
 Longshoremen's and Harbor Workers' Compensation Act, ch. 509, § 33(a), 44 Stat. 1424, 1440 (1927).
 
 
 [4]
 The original § 933(b) provided:
 Acceptance of such compensation shall operate as an assignment to the employer of all right of the person entitled to compensation to recover damages against such third person, whether or not the person entitled to compensation has notified the deputy commissioner of his election.
 Longshoremen's and Harbor Workers' Compensation Act, ch. 509, § 33(b), 44 Stat. 1424, 1440 (1927).
 
 
 [5]
 From 1938 until 1959, § 33(b) provided:
 Acceptance of such compensation under an award in a compensation order filed by the deputy commissioner shall operate as an assignment to the employer of all right of the person entitled to compensation to recover damages against such third person.
 Act of June 25, 1938, ch. 685, § 12, 52 Stat. 1164, 1168.
 
 
 [6]
 The argument that the 1959 and 1972 amendments have sub silentio abrogated Czaplicki is based on the assumption that the decision was justified only by certain disadvantages for longshoremen then inherent in LHWCA that have since been removed by these amendments. The 1959 amendment postponed the assignment for six months and gave assignees an added incentive to prosecute claims by providing them a bounty of twenty percent of any excess recovery. Act of August 18, 1959, Pub.L. No. 86-171, § 33(b), (e), 73 Stat. 391. The 1972 amendments removed critical disincentives to suit by assignees by abolishing the breach of warranty claims against employers by shipowners and longshoremen that were then available under Ryan Stevedoring Co. v. Pan-Atlantic S. S. Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956), and Reed v. The Yaka, 373 U.S. 410, 83 S.Ct. 1349, 10 L.Ed.2d 448 (1963). See 33 U.S.C. § 905(b). With the district court in the instant cases, we do not consider the Czaplicki principle to have been rendered unnecessary by these amendments. While both undoubtedly improve longshoremen's chances of recovery on third person claims in the aggregate of compensation cases, neither solves the problem of assignee inaction when it occurs in a particular case
 
 
 [7]
 See note 6 supra
 
 
 [8]
 While the district court in the instant cases rejected the notion that Czaplicki had been utterly abrogated or that its principle should be confined to its narrow facts of identity of insurers of employer and third person, it clearly thought that only a specific conflict of interest could suffice to revest the right of action in the longshoreman. See also McClendon v. Charente S. S. Co., 348 F.2d 298 (5th Cir. 1965). But see Potomac Elec. Power Co. v. Wynn, 120 U.S.App.D.C. 13, 343 F.2d 295 (D.C.Cir.1965) (revested if "for whatever reason" assignee does not sue; semble )
 
 
 [9]
 Courts addressing the problem have simply divided on the appropriate allocation. The Third Circuit in Johnson v. Sword Line, Inc., 257 F.2d 541 (3d Cir. 1958), suggested, somewhat ambiguously it must be conceded, that the assignee (a non-party?) should bear the burden. Subsequent cases have read through the ambiguity an implied holding in Johnson that the burden of proof should be carried by the third person tortfeasor. See Smith v. A. H. Bull S. S. Co., 208 F.Supp. 172, 177 (D.Md.1962) (following Johnson ). See also Potomac Elec. Power Co. v. Wynn, 120 U.S.App.D.C. 13, 16, 343 F.2d 295, 298 (D.C.Cir.1965) (semble, if any degree of conflict need be proved burden should be upon defendant). On the other hand the district court in the Bandy case involved in this appeal held that the burden of proving conflict of interest should be carried by the longshoreman attempting thereby to overcome the statutory assignment. Bandy v. Bank Line, Ltd., 442 F.Supp. 882, 887 (E.D.Va.1977). Several courts have followed Bandy. Rodriguez v. Compass Shipping Co., 456 F.Supp. 1014, 1023 (S.D.N.Y.1978); Tagliarini v. McAllister Lighterage Lines, Inc., Ind. No. 20915177 (N.Y.Sup.Ct., N.Y. County, Mar. 19, 1979)
 This divergence of views on so critical a point simply reflects the inherent difficulty in placing upon either party to litigation the decisive burden of proving the motivation for inaction of a non-party. See, e. g., McClendon v. Charente S. S. Co., 348 F.2d 298, 303 (5th Cir. 1965); Smith v. A. H. Bull S. S. Co., 208 F.Supp. at 177.
 
 
 [10]
 It is of course possible that in an occasional case territorial limitations on jurisdiction will prevent joining the assignee as a formal party. In such a case documented extra-judicial notice with fair opportunity to respond may fairly serve the purpose by analogy to traditional vouching-in procedures. Formal joinder is so much better adapted for a variety of reasons that a court might well insist upon its use whenever available. We leave that problem to another day
 
 
 [11]
 The relation back provisions of Fed.R.Civ.P. 17(a) are available to resolve any problem arising from late joinder of the real party in interest
 
 
 [12]
 All the appellants join in contending for the validity of actual reassignments. Defendants contend that the question is not properly before the court on this appeal because none of the claimants, including Caldwell, offered conclusive proof of having received a reassignment. We disagree. On the summary judgment record, it appears that the district court denied appellant Caldwell a continuance to seek reassignment because of its ruling that it would be ineffective if given. This presents a justiciable question requiring resolution on these appeals
 
 
 [13]
 Defendants rely upon both state and federal law for the rule against non-assignability. Citing McCormack v. Bloomfield Steamship Co., 399 F.Supp. 488 (S.D.N.Y.1974) where New York's non-assignability rule was held to preclude a seaman's assignment of his federally-created maritime personal injury claim, defendants point to a Virginia statute similarly prohibiting such assignments as the controlling rule of decision in this case. In a fall-back position, they urge that the general common law rule against assignment should be adopted as the rule of federal maritime law if that be the proper source of law. In view of our basis for decision that the rule has no application to this type of reassignment in any event we need not decide in this case whether state or federal law controls on the general issue. Compare Pope & Talbot, Inc. v. Hawn, 346 U.S. 406, 409-11, 74 S.Ct. 202, 204-06, 98 L.Ed. 143 (1953) (federal rather than state law of contributory negligence controls in respect of federal maritime claim) with Bank of America Nat'l Trust & Savings Assn. v. Parnell, 352 U.S. 29, 77 S.Ct. 119, 1 L.Ed.2d 93 (1956) (in action for conversion of U.S. bonds, federal law determines whether overdue, state law whether purchasers bought in good faith) and McCormack v. Bloomfield Steamship Co., supra (state law controls in respect of assignability of federal maritime claim)
 
 
 [14]
 Compensation shall be payable under this chapter in respect of disability or death of an employee, but only if the disability or death results from an injury occurring upon the navigable waters of the United States (including any adjoining pier, wharf, dry dock, terminal, building way, marine railway, or other adjoining area customarily used by an employer in loading, unloading, repairing, or building a vessel)
 33 U.S.C. § 903(a).
 
 
 [15]
 The term "employee" means any person engaged in maritime employment, including any longshoreman or other person engaged in longshoring operations, and any harborworker including a ship repairman, shipbuilder, and shipbreaker, but such term does not include a master or member of a crew of any vessel, or any person engaged by the master to load or unload or repair any small vessel under eighteen tons net
 33 U.S.C. § 902(3).