Melvin BANDY, Plaintiff,

v.

BANK LINE, LTD., Defendant.

Civ. A. No. 77–716–N.

United States District Court,
E. D. Virginia,
Norfolk Division.

July 27, 1981.

John H. Klein, Breit, Rutter & Montagna, Norfolk, Va., for plaintiff.

John R. Crumpler, Jr., Seawell, Dalton, Hughes & Timms, Norfolk, Va., for defendant.

## AMENDED OPINION AND ORDER

CLARKE, District Judge.

This matter comes before the Court on the defendant's Motion for Summary Judgment filed on May 22, 1981. The plaintiff, a longshoreman, has filed a suit seeking damages for injuries suffered while working aboard a vessel owned and operated by the defendant. The injuries allegedly were caused by the negligence of the defendant. On November 29, 1977, the defendant filed a Motion for Summary Judgment contending that the workmen's compensation benefits received by the plaintiff under the Longshoremen's and Harbor Workers' Compensation Act ("the Act"), 33 U.S.C. § 901 *et seq.*, had terminated prior to six months before the institution of the suit, thus extinguishing the plaintiff's right to bring suit. The plaintiff has admitted that the instant suit was filed after this six-month period had expired.

In an Opinion and Order dated December 30, 1977, addressing the issue raised by the defendant's motion, we held that the plain-

tiff's failure to file suit within six months of the termination of his statutorily required compensation benefits resulted in a statutory assignment from the plaintiff to his employer of the exclusive right to proceed against the vessel owner ᵖursuant to section 33(b) of the Act, 33 U.S.C. § 933(b) (1976)[1] despite the fact that no formal award had been made to the plaintiff. *Bandy v. Bank Line Ltd.*, 442 F.Supp. 882, 883–84 (E.D.Va.1977).[2] We also emphasized, however, that under *Czaplicki v. The Hoegh Silvercloud*, 351 U.S. 525, 76 S.Ct. 946, 100 L.Ed. 1387 (1956), proof of an established conflict between the interests of the assignee employer and the interests of the employee coupled with the inaction of the employer would result in a retention by the employee of the right to sue the vessel owner beyond the six-month period allowed by the Act. *Bandy v. Bank Line Ltd.*, 442 F.Supp. at 886.[3] *See also McClendon v. Charente Steamship Co.*, 348 F.2d 298 (5th Cir. 1965). Accordingly, we denied the defendant's Motion for Summary Judgment to permit the plaintiff to develop evidence, if any existed, demonstrating the existence of a conflict of interest.

On April 7, 1978, the defendant filed a second Motion for Summary Judgment, contending that the plaintiff had not sought any discovery or presented any issues of fact with respect to the conflict of interest. The plaintiff thereafter advised this Court that he had no further evidence to present on this issue. Accordingly, following a review of the file, we found no evidence of a conflict of interest and granted the defendant's Motion for Summary Judgment because, under the statute, the plaintiff's delay in filing suit of more than six months after the termination of his compensation benefits resulted in an exclusive assignment of his right of action to his employer.

The plaintiff appealed[4] and the United States Court of Appeals for the Fourth Circuit, in a detailed opinion, vacated and remanded the judgment of this Court. *Caldwell v. Ogden Sea Transport, Inc.*, 618 F.2d 1037 (4th Cir. 1980). The court specifically affirmed our rulings that an informal award was sufficient to trigger the running of the six-month period and that the assignment of the claim to the employing stevedore after six months was exclusive. *Id.* at 1041–1043. The court stated, however, that the basis of the conflict of interest exception created by the Supreme Court in *Czaplicki* was that

notwithstanding a statutory assignment of the longshoreman's right of action, that right of action may be revested in the longshoreman when it becomes manifest that the assignee, with knowledge of

---

1. The statute provides in pertinent part:

    (b) Acceptance of such compensation under an award in a compensation order filed by the deputy commissioner or Board shall operate as an assignment to the employer of all right of the person entitled to compensation to recover damages against such third person unless such person shall commence an action against such third person within six months after such award.
    33 U.S.C. § 933(b) (1976).

2. Our ruling that the lack of a formal award did not preclude the operation of the statute was based on the unequivocal mandate found in *Liberty Mutual Insurance Co. v. Ameta & Co.*, 564 F.2d 1097, 1103 (4th Cir. 1977). In *Ameta*, as in the majority of similar cases, the suit was initiated not by the employer, but by the compensation insurance carrier. Section 33(h) of the Act provides that when "the employer is insured and the insurance carrier has assumed the payment of the compensation, the insurance carrier shall be subrogated to all the

rights of the employer under this section." 33 U.S.C. § 933(h) (1976). Accordingly, the eventual assignee of the right to sue following the expiration of the six-month period available to the employee under the Act may be either the employer or the employer's compensation carrier.

3. In *Czaplicki v. The Hoegh Silvercloud*, 351 U.S. 525, 531, 76 S.Ct. 946, 950, 100 L.Ed. 1387 (1976), the Supreme Court found a conflict of interest because the compensation carrier of the employer was also the insurer of the third party defendant most likely to be held liable and, as such, the injured longshoreman's "rights of action were held by the party most likely to suffer were the rights of action to be successfully enforced." *Id.* at 530, 76 S.Ct. at 949.

4. The appeal was consolidated with five other cases addressing the same issues.

its exclusive right to control and prosecute the claim, nevertheless declines to do so for any reason.

*Caldwell v. Ogden Sea Transport, Inc.,* 618 F.2d at 1046. Based on this reasoning, the court held that the exclusive right of action revests in the longshoreman if two conditions are fulfilled. First, the longshoreman must formally signal to the assignee that he wishes the assignee to prosecute the claim under peril of having the exclusive right of action revert to him. Second, the assignee must formally signal its disinclination to pursue the claim. *Id.*

The defendant has renewed its Motion for Summary Judgment, relying on the recent Supreme Court decision in *Rodriguez v. Compass Shipping Ltd.,* —— U.S. ——, 101 S.Ct. 1945, 68 L.Ed.2d 472 (May 18, 1981). In addition, the plaintiff has filed a Supplemental Amended Complaint in which he alleges that American Mutual Insurance Company ("American") has reassigned to the plaintiff the right to proceed against the defendant. In support of this allegation, the plaintiff's counsel has filed his own affidavit, accompanied by a letter, dated June 5, 1981, signed by Mr. Robert Hunter, the District Claim Supervisor for American. The affidavit states that American has made compensation payments to the plaintiff pursuant to the Act. Mr. Hunter's letter states that American has decided "to assign to [the plaintiff], the right to proceed with this third party action."

The issue in *Rodriguez* was "what, if any, right the longshoreman has against the third-party shipowner if he does not sue within the six-month period and the employer fails to do so thereafter," —— U.S. at ——, 101 S.Ct. at 1949, precisely the issue addressed by the Fourth Circuit in *Caldwell.* After an exhaustive examination of the legislative history of the Act, preceded by the *caveat* that " 'absent a clearly expressed legislative intention to the contrary, the [statutory] language must ordinarily be regarded as conclusive.' " ——, 101 S.Ct. at 1951 (citation omitted), the Court essentially found that the longshoreman's right to file suit was completely cut off unless he

could prove a conflict of interest as delineated by *Czaplicki.*

■ Although *Caldwell* was not before it, the Supreme Court discussed that decision and specifically rejected the Fourth Circuit's judicially created reassignment of a right of action to the employee when the assignee fails to prosecute the claim.

The predicate for the Fourth Circuit's analysis was an assumption that Congress did not intend to allow the longshoreman to lose his rights against a third party simply because (a) he failed to take any action within 6 months and (b) his employer decided not to sue the third party thereafter.... We are persuaded that the reason Congress did not specifically provide the solution which the court readily found is that Congress did indeed intend to require the employee either to act promptly or to accept the consequences of an assignment of his claim to the employer. One of the consequences of such an assignment is the risk that the employer will choose not to sue. The comprehensive character of the procedures outlined in the Act precludes the fashioning of an entirely new set of remedies to deal with an aspect of the problem that Congress expressly addressed. The fact that parties sometimes fail to assert meritorious claims within the period authorized by law is not a sufficient reason for refusing to enforce an unequivocal statutory bar.

*Id.* at —— ——, 101 S.Ct. at 1955–56 (footnotes omitted). This language effectively overturns the basis upon which the Fourth Circuit reversed our grant of the defendant's previous Motion for Summary Judgment and clearly indicates that once the exclusive right of action has been assigned to the employer by virtue of the operation of section 33(b) of the Act, it does not revest in the employee simply because the employer fails to pursue the claim. In addition, the Fourth Circuit's affirmance of our ruling that more than six months had elapsed between the award to the plaintiff and the filing of his Complaint was not disturbed by the Supreme Court in *Rodriguez.* The Court specifically stated that for

purposes of its decision, it was assuming that the acceptance of compensation, even without a formal award, triggered the running of the six-month limitation of the Act, and limited its review to the issue of whether reassignment to the employee occurred upon the employer's failure to prosecute the action. *Id.* at —— n.3, 101 S.Ct. at 1947 n.3. Thus, insofar as the issue of when an award is made triggering the six-month limitation, we are bound by the Fourth Circuit's holdings in *Caldwell* and *Liberty Mutual Insurance Co. v. Ameta & Co.*, 564 F.2d 1097 (4th Cir. 1977). Accordingly, American's failure to file suit has not resulted in an automatic reassignment to the plaintiff of this right.

■ We next address the issue of the effectiveness of the express assignment of the right to sue executed by American and delivered to the plaintiff.[5] The Fourth Circuit in *Caldwell* viewed an express reassignment as one of the procedural tools for effectuating what it perceived to be the underlying purposes of the Act and of *Czaplicki*.[6] 618 F.2d at 1046. As we have already indicated, the Supreme Court in *Rodriguez* rejected the underlying basis of the *Caldwell* decision and disapproved of the Fourth Circuit's fashioning a remedy that the comprehensive character of the procedures outlined in the Act did not specifically provide. *Rodriguez v. Compass Shipping Co.*, —— U.S. at —— – ——, 101 S.Ct. at 1955–56. Moreover, the Court specifically addressed the issue of a nonstatutory right to a reassignment created by the Fourth Circuit[7] and discussed the procedural mechanism for implementing this right delineated by the Fourth Circuit. The

Court, guided by the concept that when "interpreting the intent of Congress in fashioning various details of this legislative compromise, the wisest course is to adhere closely to what Congress has written." *Id.* at ——, 101 S.Ct. at 1957–58 (footnote omitted), concluded that there was "no evidence that Congress created either the *substantive right itself or the procedural rights* that the court discerned." *Id.* at ——, 101 S.Ct. at 1955 (emphasis supplied). "The meaning of § 33(b) is plain and should be respected." *Id.* at ——, 101 S.Ct. at 1957–58. Thus, in the absence of a conflict of interest, the Court found that no means (procedural rights) existed by which an assignment of the right to bring suit (substantive right) could be made by the employer or his compensation carrier and that the employee had no right to receive (substantive right) such an assignment.

Accordingly, we FIND that the assignment from American to the plaintiff is ineffective and does not revest in the plaintiff the right to file suit against the defendant. The language of the Act is plain and unequivocal and does not provide for either the substantive right to receive such an assignment or for the procedure used by the plaintiff. To hold otherwise would constitute an end run around and make a mockery of the clear Congressional mandate that a longshoreman file his suit within six months of the receipt of an award. Absent a conflict of interest, an employer or compensation carrier who had failed to pursue the cause of action, either because it had been dilatory or because it believed that the action was so weak that it did not wish to

---

5. Although we have doubts about the ability of the short letter to act as an effective and binding assignment under general contract law, we assume for the purpose of this opinion that this letter meets the contractual prerequisites of a valid assignment.

6. The practical and procedural means for realizing these are also readily found. A longshoreman desiring to force decision can of course first proceed extra-judicially to request action by the assignee or, *as an alternative, formal reassignment of the right of action.* As we indicate in Part IV of this Opinion, a formal reassignment will be effective

to revest the exclusive right of action in the longshoreman. *Caldwell v. Ogden Sea Transport, Inc.*, 618 F.2d 1037, 1046 (4th Cir. 1980) (emphasis supplied).

7. In an attempt to avoid the conclusion mandated by its plain language, petitioners contend that the Act should be construed . . . to grant the employee an implicit right to have the third-party claim reassigned if the employer fails to sue. *Rodriguez v. Compass Shipping Co.*, —— U.S. ——, ——, 101 S.Ct. 1945, 1950, 68 L.Ed.2d 472 (1981).

risk the cost of litigation, certainly would assign that right to the employee in the hope that the employee would initiate the action.[8] If, for example, the employee brought suit seeking a nuisance settlement, to harass the third-party tortfeasor, or even in the mistaken belief that he had a valid claim, the employer or its compensation carrier, by virtue of its statutory lien, would be the beneficiary, without risk, of any unexpected recovery.

Accordingly, an employer or compensation carrier would be foolish not to expend the insignificant effort required to execute an assignment of the right of action upon a request by the longshoreman in every case that it had decided not to pursue and in which no conflict of interest existed. The circumstantial evidence in the instant case supports our conclusion. The assignment here was executed by an officer of American, the compensation carrier, approximately one week after the submission of a request for such an assignment by the plaintiff's attorney. Moreover, the request was submitted on May 28, 1981, only ten days after the Supreme Court decided *Rodriguez*. The Act and its legislative history, as interpreted by the *Rodriguez* Court, clearly forbid such a *pro forma* procedure for reinstating a longshoreman's right to sue a third party once he has lost such a right because of his failure to file suit within the six-month limit established by the Act.

### Conclusion

In sum, we FIND that the exclusive right to the instant cause of action was assigned to the plaintiff's employer under section 33(b) of the Act. Moreover, under *Rodriguez*, a reassignment of the action can occur only if evidence of a conflict of interest, as delineated in *Czaplicki*, is present; the simple failure of the employer to prosecute the claim is not enough.[9] The record contains no evidence of a *Czaplicki* type of conflict. Moreover, the assignment executed by American and delivered to the plaintiff is ineffective. Accordingly, the defendant's Motion for Summary Judgment is GRANTED and the plaintiff's Complaint is DISMISSED.

I have consulted my fellow judges in this division and they have authorized me to say that they concur with this Opinion.

---

8. The *Caldwell* court noted three reasons for the assignee's failure to file suit following a statutory assignment under section 33 of the Act:

> It may not consider a claim thought meritorious by the longshoreman to be sufficiently so to warrant the expense of litigation. It may have a specific conflict of interest that militates against prosecuting the claim. It may simply be dilatory to the point that the claim is threatened by a limitations bar.

*Caldwell v. Ogden Sea Transport, Inc.*, 618 F.2d 1037, 1045 (4th Cir. 1980). In the second situation, the employer or his compensation carrier certainly would refuse to assign the right of action. The longshoreman, however, should be able to file suit under the *Czaplicki* exception and no express written assignment would be required. In the first and third situations, the employer or compensation carrier would have no reason to prevent another party from filing suit. It would have no interest in the effect of such a suit on the third-party tortfeasor. By failing to file suit, it would have lost its ability to recover the compensation benefits paid to the longshoreman. If an assignment were viewed as effective, the employer or compensation carrier would retain a lien on the longshoreman's recovery, if any, to the extent of any compensation payment made to the longshoreman, *see* 33 U.S.C. § 933(b) (1976); *Bloomer v. Liberty Mutual Ins. Co.*, 445 U.S. 74, 100 S.Ct. 925, 63 L.Ed.2d 215 (1980), and the longshoreman would be able to obtain an assignment simply by requesting one.

9. The notion adopted in some post-*Czaplicki* decisions that a conflict of interest may be presumed whenever an employer does not sue on an assigned claim is simply untenable in light of the plain statutory language and history of the 1959 and the 1972 Amendments.

*Rodriguez v. Compass Shipping Co.*, —— U.S. ——, ——, 101 S.Ct. 1945, 1958 (1981).